## Jones v. Chesapeake & Ohio Railway Company.

(Decided October 1, 1912.)

### Appeal from Lewis Circuit Court.

Railroads—Interstate Commerce—Act of Congress—Negligence—Evidence—Recovery at Common Law.—Where appellant was engaged in repairing a side track of a railroad so that its interstate trains would not be delayed, no reason can be perceived why he has not the right to the benefits of the Employer's Liability Act in an action against the railroad for an injury, but the act referred to did not repeal the common law, and when the lower court determined that the evidence did not entitle him to recover under the Employer's Liability Act, he was entitled to have his case submitted under the common law. It was error to refuse an instruction authorizing a recovery at common law.

ALLAN D. COLE, E. H. FITCH for appellant.

WORTHINGTON, COCHRAN & BROWNING for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

Appellant instituted this action in the Lewis Circuit Court, claiming damages on account of the gross negligence of appellee's employees, which resulted in an injury to his thumb, and made it necessary to have it amputated. He made the necessary allegations to recover under the Act of Congress of April 22, 1908, which has reference to the regulation of interstate railroads and their employes, or what is known as "The Employers' Liability Act." The petition also contained sufficient allegations to authorize him to recover damages under the common law of this State, as construed by this court.

Apppellant introduced his testimony and at its conclusion, the court sustained a demurrer to the evidence and dismissed the action, and he has appealed. The lower court concluded that the evidence was not sufficient to authorize appellant to recover under the act referred to, as it only showed that he engaged, with other hands, in repairing a side track of the railroad; and for some reason not stated, he declined to give an instruction allowing him to recover under the common law.

In short, the evidence tended to show that appellant, at the time of his injury, was engaged with seven or eight other employees, in placing one end of a seventy-five pound rail against one end of a hundred pound rail on a siding; that, as the rails were of different size, something had to be placed under the smaller one to make the top of it level with the other; that appellant had hold of the end of the seventy-five pound rail which was to be placed against the other rail, for the purpose of guiding it to the point where it would connect with that rail; that the other employees had hold of it at and near the other end; that the boss was standing near to and looking at appellant, whose duty it was to make it known when he was ready for the other employees to shove the rail into the slot and up against the one hundred pound rail; that it was then the duty of the boss, after receiving notice from appellant to tell the other employees to shove; that upon this occasion the boss did not wait for appellant to give him notice that he was ready, but directed the shove to be made without any such notice, and appellant's thumb was caught between the two rails and mashed so that it had to be amputated.

Appellee was an interstate railway and appellant was its employee, but the lower court concluded that, as appellant was only engaged in repairing a side track, he was not engaged in interstate commerce at the time he was injured; and appellee refers us to the following cases as sustaining the conclusion of the lower court, to-wit: Lamphere v. Oregon R. & Navigation Co., &c., 193 Fed., 248, the opinion in which was written by Rudkin, District Judge. The facts of that case show that one Lamphere was employed as a fireman on the railroad; that on the evening of his injury, he received orders from a superior officer to take a train at Tekoa and proceed westerly to a certain town, there to relieve an engine crew which had been continually employed for more than sixteen hours; that while on his way from his home to the depot in Tekoa for the purpose of boarding the train, Lamphere was crushed between two cars and received injuries from which he afterwards died. In that case, the court said:

"It would also seem that men employed in the repair of engines or cars which have been removed from the service, or in the general maintenance or repair of railroads used indiscriminately in intrastate and interstate commerce, are not employed in interstate commerce, although there is a diversity of opinion on this question. Pederson v. Delaware, L. & W. R. Co. (C. C.), 184 Fed., 737, and cases therein cited." In the same opinion it is further said:

"For the purposes of this case, I deem it sufficient to say that a locomotive fireman is not, while on the way from his home to the depot, for the purpose of taking a train to a distant point, as a part of a deadhead crew, there to fire an engine hauling an interstate train, employed in interstate commerce. Indeed, he is not employed in commerce of any kind. His employment is only constructive at best, and such employment does not satisfy the requirements of the act."

So much of the Act of Congress referred to as has reference to the questions under consideration, is as follows:

"Every common carrier by railroad while engaged in commerce between any of the several States * * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such com-

merce, or, in case of the death of such employee to his or her personal representative,'' &c.

This is a rather recent act, and, so far as we have been advised, there has not been many opinions defining what employees engaged by an interstate railroad the act was intended to include. It has been held to include employees engaged in repairing engines and cars temporarily removed from service, and employees engaged in repairing and maintaining railroads used indiscriminately in intrastate and interstate commerce. See Lamphere v. Oregon R. & Navigation Co., &c., supra, and Pederson v. Delaware, L. & W. R. Co., 184 Fed., 737. The Lamphere case was appealed to the Circuit Court of the United States, and that court delivered its opinion in the case on May 6, 1912, which was after the appeal was taken in the case at bar. (See 196 Fed., 336.) The circuit court reversed the judgment of the district court and, after discussing several recently rendered opinions on the same subject, especially the opinion by the United States Supreme Court in the case of Mondou v. New York, &c., R. Co., 223 U. S., 1, said:

''As indicated in the opinion (referring to the opinion in the Mondou case), the test question in determining whether a personal injury to an employee of a railroad company is within the purview of the act is: What is its effect upon interstate commerce? Does it have the effect to hinder, delay, or interfere with such commerce? As applied to the present case, it is this: Was the relation of the employment of the deceased to interstate commerce such that the personal injury to him tended to delay or hinder the movement of a train engaged in interstate commerce? To that question we think there can be but one answer. Under the imperative command of his employer, the deceased was on his way to relieve, in the capacity of a fireman, the crew of a train which was carrying interstate commerce, and the effect of his death was to hinder and delay the movement of that train. In our opinion, the complaint states a cause of action under the Employers' Liability Act.''

In the case of Zikos v. Oregon R. & Navigation Co. (C. C.), 179 Fed., 893, it was held that one engaged in repairing the main track of a railroad and driving spikes in the ties for the purpose of tightening the joints of the rails was engaged in interstate commerce, and that he might recover under the Employers' Liability Act

for injuries sustained by reason of the negligence of a fellow servant engaged in such employment. In Colasurdo v. Central R. R. Co. of New Jersey (C. C.), 180 Fed., 832, where a track walker was injured while assisting his fellow employees in repairing a switch in a railroad yard, the switch being connected with a track used for both interstate commerce and intrastate commerce, it was held that he was engaged in interstate commerce, within the Employers' Liability Act. The court said:

"Would not a track walker engaged in the repair of such a track be engaged in interstate commerce? I do not think he would be any the less so engaged than the engineer on the locomotive or the train dispatcher who kept the trains at proper intervals for safety."

In Behrens v. Illinois Central R. Co. (D. C.), 192 Fed., 581, the court said:

"I consider that the usual and ordinary employment of the decedent in interstate commerce, mingled though it may be with employment in commerce which is wholly intrastate, fixes his status and fixes the status of the railroad, and the mere fact that the accident occurred while he was engaged in work on an intrastate train, rather than a few minutes earlier or later, when he might have been engaged on an interstate train, is immaterial. If he was engaged in two occupations that are so blended as to be inseparable, and where the employee himself has no control over his own actions, and cannot elect as to his employment, the court should not attempt to separate and distinguish between them."

In Central R. Co. of New Jersey v. Colasurdo, 192 Fed., 901, the court said:

"The car which struck the plaintiff was employed in interstate commerce. It connected with defendant's ferry boats at Jersey City, and passengers from New York to Somerville, N. J., and vice versa, were transported in it. The track and switch in question were used by engines and cars so engaged. We think the statute was intended to apply to every carrier while engaging in interstate commerce, and to an employee of such carrier while so engaged, and, if these conditions concur, the fact that the carrier and the employee may also be engaged in intrastate commerce is immaterial. The plaintiff was repairing an interstate road over which interstate passengers and freight and cars and

engines engaged in interstate commerce were constantly passing.''

The switch being repaired by appellant in the case at bar, was constructed and used by appellee so as not to delay its interstate passenger and freight trains, and appellant, who was working under a superior, was aiding in the repair of it, and we can see no reason why he has no right to the benefits of the Employers' Liability Act. He was employed by an interstate carrier in interstate commerce as much as a track walker, or person working on an intrastate train, or a person engaged in repairing a railroad bridge, or a person going from his home to a railroad depot to proceed to another town where he was to take charge, as fireman, of an engine hauling interstate commerce.

In addition to what we have said, appellant was entitled to have his case submitted to the jury upon the idea that he was entitled to recover at common law if his boss was guilty of gross negligence in having the rail shoved without first receiving notice from appellant that he was ready for it to be shoved. This court has often decided, under such state of facts, that the injured party was entitled to recover. The act referred to did not repeal the common law as applicable to Lewis County; it, at most, only superseded that law; therefore, when appellant brought his action under the Congressional act and the lower court determined that his evidence did not show him to be entitled to recover under that act, he was then entitled to have his case submitted under the common law. (Ullrich v. N. Y., N. H. & H. R. Co., 193 Fed., 768).

For these reasons, the judgment of the lower court is reversed, and case remanded for further proceedings consistent herewith. (Whole court sitting).