JESSE P. MANES, Respondent, v. ST. LOUIS, SAN FRANCISCO RAILWAY COMPANY, Appellant.

Springfield Court of Appeals, March 27, 1920.

1. **COMMERCE: Work in which Employee is Injured Must be Directly in Furtherance of Interstate Traffic to be Within Federal Act: Interstate Commerce.** An employee of an interstate railroad is not engaged in interstate traffic when injured, to come within the protection of the federal Employers' Liability Act (U. S. Comp. St., secs. 8657-8665), unless his work is in direct furtherance of such traffic, or so closely connected with it as necessarily to become a part of it.

2. ———: **Employees Repairing Tracks for Interstate and Other Traffic are Within Federal Act.** Employees of interstate railroads engaged in repairing tracks, bridges, switches, etc., used both for intra and interstate traffic, are employed in interstate commerce, and are within the protection of the federal Employers, Liability Act (U. S. Comp. St., secs. 8657-8665) in case they sustain injuries while so employed.

3. **MASTER AND SERVANT: Employment in Interstate Commerce Jury Question.** In an action under federal Employers' Liability Act (U. S. Comp. St., secs. 8675-8665) for injuries to a railroad employee assisting in removal of old timbers taken from bridge used both for infra and interstate commerce and in course of repair,

*held* that court properly submitted to jury question of whether plaintiff was employed in interstate commerce.

4. **TRIAL: Refusal of Requests Substantially Covered, Harmless.** The refusal of requested instructions, substantially covered in another instruction modified by the court, was harmless.

5. ———: **Modification of Instruction on Assumption of Risk Held not Erroneous.** In an action under federal Employers' Liability Act U. S. Comp. St., secs. 8675-8665) for injuries to a railroad employee unloading car of old timbers from bridge under repair, modification of railroad's requested instruction on assumption of risk by adding the word "agreed" (it was agreed and determined between plaintiff and defendant's agent) before the word "determined," *held* not erroneous as changing the real meaning of the instruction.

6. **MASTER AND SERVANT: Knowledge of Danger from Unloading Car Question for Jury.** In an action under federal Employers' Liability Act (U. S. Comp. St., secs. 8657-8665) for injuries to a railroad employee unloading old timbers from a bridge under repair, whether car unloaded was first plaintiff had ever undertaken to help unload, and whether he knew absolutely nothing about how to proceed, except as directed by foreman, *held* proper questions for jury.

7. ———: **Contributory Negligence in Emergency, Question of Fact.** In an emergency, and where action of some sort must be taken at once, an employee will not be *held* guilty as a matter of law of contributory negligence merely because in the emergency he does not act in the safest way.

8. ———: **Railroad Employee's Contributory Negligence in Emergency Held a Jury Question.** In an action under federal Employers' Liability Act (U. S. Comp. St., secs. 8657-8665) for injuries to a railroad employee unloading car of old timbers taken from bridge under repair, whether he was negligent in failing to run in a particular direction to escape injury from falling timbers. instead of in another *held* for jury.

9. **NEGLIGENCE: Contributory Negligence Diminishes Recovery under Federal Act.** Under federal Employers' Liability Act, Sec. 3 (U. S. Comp. St., sec. 8659), a railroad employee guilty of contributory negligence cannot recover full damages for his injuries. but only a proportional amount bearing the same relation to the full amount as negligence attributable to railroad bears to entire negligence attributable both to it and him.

10. **TRIAL: Clerical Error in Instruction on Effect of Constributory Negligence in Reducing Damages Cured by Correct Instruction. In an**

action against railroad under federal employers' Liability Act (U. S. Comp. St., secs. 8657-8665) for injuries to employee in interstate commerce, instruction on effect of contributory negligence in reducing damages, inadvertently using the word "plaintiff" instead of "defendant," *held* not misleading, in view of another correct instruction, and therefore not reversible error.

11. ———: Instruction as to Effect of Contributory Negligence under Federal Liability Act not Fatally Erroneous. In an action against a railroad for injuries by its employee under federal employers' Liability Act (U. S. Comp. St., secs. 8675-8665), in view of another proper instruction, plaintiff's instruction that, if he was guilty of contributory negligence causing his injury, it would not defeat recovery, provided defendant railroad also was negligent, *held* not fatally erroneous as misleading.

Appeal from Circuit Court of Laclede County.—
*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*W. F. Evans* and *Mann, Todd & Mann* and *Frank H. Farris* for appellant.

(1) The plaintiff must prove that he was employed in interstate commerce or in interstate traffic at the time of his injury, and a failure so to do denies him any right to recover under the Federal Employers Liability Act. Vaughn v. Railroad, 177 Mo. App. 165; Miller v. Railroad, 180 Mo. App. 375. (2) The proof must show that the defendant was an interstate carrier and that the employee at the time of his injury was engaged in interstate employment, that is, that the work in which he was employed at the time of his injury was so closely connected with interstate commerce as to be a part of it. Eng. v. Southern Pacific Railway, 210 Fed. 92. And the test of whether the employee is engaged in interstate commerce is the nature of his work at the time of his injury. [Shanks v. Delaware, L. & W. Railway, 239 U. S. 556, 36 Sup. Ct. Rep. 188, 60 L. Ed. 436.]

*L. C. Mayfield* and *Hamlin & Hamlin* for respondent.

No brief by respondents.

BRADLEY, J.—Plaintiff, respondent here, recovered below on trial before the court and a jury, and defendant appealed. Plaintiff's petition originally was in two counts, the first based upon comman law negligence, and the second upon the Federal Employers' Liability Act. Upon motion by defendant, plaintiff elected to proceed on the second count.

Plaintiff had been in the employ of defendant, an interstate railway, and its predecessors for several years, most of the time as section hand. About six weeks prior to the injury complained of, plaintiff went to work in what is called the mason gang, making and placing concrete wherever needed. Up until about the middle of the afternoon on the day plaintiff was injured he had been working on the roundhouse foundation in Newburg, Missouri. A short time before this the railroad bridge at Arlington over the Gasconade River had been repaired, and quite a number of old bridge timbers taken out. These old timbers were loaded on flat cars and coal cars, and some of these cars were taken to the yards at Newburg. One of these cars, a flat car, loaded with these old timbers, some 8 x 10 inches, and some 10 x 12, of various lengths, some being nearly the length of the car, had been placed on a side track in Newburg to be unloaded. Other timbers of similar description had prior thereto been unloaded alongside of the track where this car was set. The flat car was loaded eight or nine feet high, the timbers lying flat on each other. Along each side there were four stakes at intervals driven in iron sockets, and extended up above the pile of timbers. The car set east and west, and on a curved track, the high side being on the north.

Plaintiff was directed by his foreman to assist in unloading this flat car. He was directed to get an axe and cut the two middle stakes first. This he did, while

another on top the load of timbers threw the stakes, when cut, out of the way. Plaintiff after cutting the two middle stakes, awaited the return of his foreman, who had gone away temporarily while the middle stakes were being cut. On the foreman's return plaintiff was directed to cut the east end stake. After striking this stake, which was seven or eight feet from the end of the car, the west end stake gave way, and the timbers fell catching plaintiff's feet, and crushing them, as he was endeavoring to escape over a pile of timbers alongside the flat car.

Plaintiff charged several specific acts of negligence, but only one was submitted to the jury, viz: that defendant was guilty of negligence in directing plaintiff to cut the stakes without first providing against the timbers falling when the stakes were removed, which in general means that the defendant was negligent in failing to exercise ordinary care to furnish plaintiff a reasonably safe place to work. The answer was a general denial, assumption of risk and contributory negligence.

Alleged error as assigned may be grouped under two heads. (1) The refusal of the court to give defendant's instruction in the nature of a demurrer, and (2) giving instructions on the part of plaintiff, and refusing and modifying instructions asked by defendant. The demurrer was leveled chiefly at the point that plaintiff had bottomed his cause upon the Federal Employers' Liability Act and had failed to show that at the time of his injury he was engaged in work directly connected with interstate traffic, or so closely connected therewith as to become a part of it. The record shows that defendant's railroad is interstate; that the Arlington bridge is on the main line from Missouri to Oklahoma and Texas. Defendant concedes that the repairing of the bridge, the taking out the old timbers and putting in the new, would be work so directly in furtherance of interstate traffic as to be a part of it; but insists that plaintiff was not employed at the time of his injury in the direct furtherance of interstate traffic, or in work so closely connected therewith as to become a

part of it. Plaintiff had nothing to do with taking the old timbers out of the bridge or in putting the new ones in; he had nothing to do with loading the old timbers, or with transporting them to the switch in Newburg. The record discloses also that some of the timbers unloaded, or being loaded, were used in the yards at Newburg, and some of them around the cinder pit. It does not appear for what purpose they were used, except those that went about the cinder pit, and the use about the cinder pit must have been in the nature of repairs. The concrete question, therefore, is: Was plaintiff, while assisting in the unloading of these timbers, directly engaged in the furtherance of interstate traffic, or in work so closely connected with interstate traffic as to become a part thereof?

There can be no hard and fast rule by which to determine whether an employee of an interstate railroad is engaged in interstate traffic, but each case must depend upon its own facts. The general rule is that the work in which an employee is engaged must be in the direct furtherance of interstate traffic, or work so closely connected with interstate traffic as necessarily to become a part thereof. [Pedersen v. Railroad, 229 U. S. 146, 57 L. Ed. 1125; Shanks v. Railroad, 239 U. S. 260, 35 S. Ct. 780; Chicago, Burlington & Quincy Railroad Company c. Harrington, 241 U. S. 177; 36 S. Ct. 517; 60 L. Ed. 941; Harrington v. Railroad, 180 S. W. 443; Probus v. I. C. Railway Company, 203 S. W. (Ky.) 862; Hargrove v. Gulf, C. & S. F. Railway Company, 202 S. W. (Tex.) 188.]

Employees of interstate railroads engaged in repairing tracks, bridges, switches, etc., used for both intrastate and interstate traffic are held to be employed in interstate commerce, and to be within the protection of the Federal Statute in case they sustain injuries while so employed. [Pedersen v. Railroad, supra; Central Railroad Company v. Colasurdo, 113 C. C. C. 379; 192 Fed. 901; Zikos v. Railroad, 179 Fed. 893; Jones v. Railroad, 149 Ky. 566, 149 S. W. 951; Probus

v. I. C. Railway Company, supra; Hargrove v. Gulf, C. & S. F. Railway Company, supra.]

In the Pedersen case, supra, it is said: ''Tracks and bridges are as indispensable to interstate commerce by railroad as are engines and cars; and sound economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. The security, expedition and efficiency of the commerce depends in large measure upon this being done. Indeed, the statute now before us proceeds upon the theory that the carrier is charged with the duty of exercising appropriate care to prevent or correct any defect or insufficiency . . . in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment used in interstate commerce. But independently of the statute, we are of opinion that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to such commerce as to be in practice and in legal contemplation a part of it. The contention to the contrary proceeds upon the assumption that interstate commerce by railroad can be separated into its several elements, and the nature of each determined regardless of its relation to others or to the business as a whole. But this is an erroneous assumption. The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged?''

Not only is the interstate carrier required to keep its track in a reasonably safe condition, but also it is required to keep its roadbed and right of way in a reasonably safe condition. [Hargrove v. Gulf, C. & S. F. Railway Company, supra.] Removing the discarded timbers taken from the bridge from the right of way would be as directly connected with interstate traffic as was the taking of said timbers from the bridge. The question arises when would the handling of these discarded timbers cease to be a work directly connected with interstate traffic or so closely related thereto as to be a part thereof? An employee engaged in operating the train that hauled these timbers to Newburg was,

in the light of the authorities, engaged in work directly in furtherance of interstate commerce. Had the same crew that hauled the timbers to Newburg unloaded them as one continuous job, their work in unloading would surely have been as much in furtherance of interstate commerce as the transporting of the timbers was, and we can see no difference in principle and application in plaintiff's character of work, than had he been of the original crew, and was unloading as a part of the continuous job in moving the timbers from the right of way. And in addition plaintiff had in his favor the fact that some of these timbers were to be used around the cinder pit which presumably accommodated all trains, both intra and interstate. Clearing the track and right of way of the discarded timbers was as necessary to the operation of interstate trains as was the repairing of the bridge. It was the duty of the defendant railway company to keep its track, roadbed and right of way in a reasonably safe condition, and this could not be done except by removing and depositing these timbers somewhere. The removing and depositing being merely the completion of the original undertaking in the repairing of the bridge used in interstate traffic.

It was held in Philadelphia B. & W. Railroad Company v. McConnell, 228 Fed. 263, that an assistant foreman of a gang on a work train on an interstate road is engaged with interstate commerce when injured, when at the time he was engaged in removing old rails that had been replaced by new ones upon the main line of the road. In Cherposki v. Great Northern Railway Company, 128 Minn. 360, 150 N. W. 1091, it was held a question for the jury where the plaintiff, a section foreman, was working with others in taking out rails on the main line of an interstate carrier and putting others in their place, loading those taken out on a flat car near by and was injured while so loading. In Probus v. I. C. Railroad Company, supra, it was held that where an employee of an interstate carrier was engaged in lifting rails from the ground and placing them on a car to be taken to another point on the line, and there

used in maintaining or repairing the track, it was a question for the jury whether the person injured was engaged in interstate commerce when injured.

In Hargrave v. Gulf etc. Railway, supra, it was held that the operator of a loader used to load rails on a flat car after workmen had removed them from the ties and laid new rails, was engaged in the repair of tracks, and if the railroad was interstate, such operator was engaged in interstate commerce. In the Hargrove case it is said: "It stands to reason that appellant's railroad could not long be safely and properly operated if the steel rails which had been removed from the track when others were being put down had been permitted to remain on and about appellant's track, and interfere, which they naturally would, with the proper upkeep and repair of such track, and perhaps would render it unsafe, not only for the proper operation of appellant's trains thereover, but also might endanger employees engaged in the necessary and proper upkeep and repair of such track. We believe that what appellant was doing on the occasion in question must be held to be in the nature of repairs to appellant's track. It may be that the Supreme Court of the United States went the extreme limit on this question in the Pedersen case, supra, and other cases following that; and while it is true that three of the Justices of that court dissented in the Pedersen case, nevertheless the decision is one by that court, and the subject-matter being one concerning which the decisions of that court are final and must control, this court has no alternative but to follow such decisions."

In Hardwick v. Railroad, 181 Mo. App. 156, 168 S. W. 328, it is held that a section man sweeping snow from the switches connecting with the main track of an interstate railroad was engaged in interstate commerce under the Federal Employers' Liability Act. In Spaw v. Railroad, 198 Mo. App. 552, 201 S. W. 927, it was held that an employee engaged in clearing a track where an engaged in interstate commerce. In the Spaw case the court said: "But the cause of action is not

within the Employers' Liability Act unless the injury occurred 'when the particular service in which the employee is engaged is a part of interstate commerce.' [Illinois Central Railway Co. v. Behrens, 235 U. S. 473] Hence, the question arises was plaintiff engaged in interstate commerce at the time he was injured? Clearly he was, as to the defendant Terminal Company, because he was then engaged in clearing the tracks of said com pany in order that transportation thereover might not be hindered or impeded. The tracks being indispensable to the interstate commerce in which the .defendant Terminal Railroad was engaged, the clearing thereof was not a matter of indifference to such commerce, but was 'so closely connected therewith as to be a part of it.' [Pedersen v. Delaware etc. R. Co., 229 U. S. 146, 151.] The authorities all hold that when the work being done is such that it directly affects or facilitates the carriage of interstate commerce, then the employee is engaged in such commerce.''

In Dowell v. Wabash, 190 S. W. (Mo. App.) 939, it was held that a section man, engaged in the service of an interstate carrier, was engaged in work in the furtherance of the interstate commerce, when he was repairing a side track leading from the main track to scales on which cars destined for other states were weighed to ascertain whether they were overloaded. It has been held that employees engaged in repairing switches and side tracks over which interstate and intrastate traffic was carried, were, within the meaning of the Federal Employers' Liability Act, engaged in interstate commerce. [Jones v. Railroad, 149 Ky. 566, 149 S. W. 951; Truesdell v. Railroad, 159 Ky. 718, 169 S. W. 471.] In Texas & P. R. Co. v. White, 177 S. W. (Tex.) 1185, it was held that a section foreman of an interstate railroad run down while helping his crew lift a hand car from the track for a train made up partly of cars bound for interstate points was engaged in interstate commerce within the Federal Employers' Liability Act.

We have not overlooked the case of Chicago, Burlington & Quincy Railroad Co. v. Harrington, 241 U. S. 176, 36 Sup. Ct. Rep. 517, 60 L. Ed. 941. The Supreme Court of the United States there said: "As we have pointed out, the Federal act speaks of interstate commerce in a practical sense suited to the occasion, and the true test of employment in such commerce in the sense intended is: Was the employee at the time of the injury engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?" As we have pointed out the Supreme Court in the Pedersen case, supra, and many others, holds that there can be no definite rule of guidance in the character of question here; that such case must turn on its own facts. The Harrington case went to the Supreme Court of the United States from the Kansas City Court of Appeals. It was before that court twice, 163 Mo. App. 194, 146 S. W. 820, also 180 S. W. 443, where a more extended statement of the facts may be found. Patrick Harrington, a switchmen was employed by the railway company. The switching crew in which Harrington worked did not work outside of Missouri, but in the company's yard in Kansas City. Harrington was killed while switching a car of coal, belonging to the railway company, and which had been standing on a storage track for some time, to the coal shed, where it was to be placed in bins or chutes, and supplied as needed, to locomotives of all classes, some of which were engaged or about to be engaged in interstate and others in intrastate traffic. The Kansas City Court of Appeals held that the deceased was not engaged in interstate commerce. 180 S. W. 443, and the Supreme Court of the United States affirmed this holding. But it will be noted that the work in which Harrington was engaged was in handling coal, a part of which would be used to fire engines in interstate traffic; while in the case at bar plaintiff was finishing a work that had admittedly been in furtherance of interstate traffic from its inception, and like the Pedersen case, in a measure, in that it was in the nature of repairs, since the timbers came

from the bridge that was repaired, and some of them were to be used around the cinder pit in the yards at Newburg. We believe that the facts of the instant case distinguish it from the Harrington case. If we apply the "practical sense suited to the occasion" rule, it necessarily follows that the work of unloading these timbers was "so closely related" to work, admittedly in furtherance of interstate commerce, "as to be practically a part of it." Bearing in mind the distinction in the character of work being done by plaintiff in the instant case from that in the Harrington case, and applying the "practical sense" rule spoken of in the Harrington case we hold that error was not committed by submitting to the jury the question as to whether plaintiff was at the time of his injury engaged in work directly connected with interstate commerce. Nor do we think that defendant's demurrer should have been sustained on other grounds.

Appellant complains about the action of the trial court in giving certain instructions for plaintiff, and in refusing and modifying instructions requested by defendant. Defendant requested two instructions, three and four, which submit the assumption of risk defense, and these were refused; but we think the same ground is substantially covered in defendant's instruction modified by the court. Defendant requested an instruction directing the jury that plaintiff could not recover if they found that before he entered into the act of cutting the post from the flat car that he had investigated the condition of the timbers on the car, and had seen and observed their condition, and had discussed with the defendant's agent the safe and proper way in which to unload said timber, and that it was *determined* between plaintiff and defendant's agent that the manner pursued in attempting to unload the car was reasonably safe, and was the proper way to unload the same, and that the plaintiff could understand the danger incident to unloading the car, and that plaintiff was as familiar with the conditions appertaining to the car as was his foreman. The jury were told by this instruction that

if plaintiff knew all these things as well as his foreman that he assumed the risk and could not recover. The trial court added the word "agreed" before the word "determined" in the instruction. We do not think that this changed the real meaning of the instruction. The foreman testified that all details were gone over, and that it was the common judgment and opinion of all that the manner pursued in attempting to unload the flat car was the proper one. Plaintiff testified that that was the first car of timber that he ever undertook to help unload, and that he knew absolutely nothing about how to proceed or what to do except as he was directed by the foreman. These were proper questions for the jury, and in our opinion were properly submitted.

Defendant urges that plaintiff was guilty of contributory negligence in failing to run forward and then to the south between two piles of timbers that had been previously unloaded, instead of running south and over the timbers as he attempted to do. Plaintiff was chopping right handed the east end stake, his face to the east; it was about eight or ten feet from the stake to the end of the car. This was clearly a question for the jury. It is well settled that in an emergency and where action of some sort must be taken at once, one will not be held guilty, as a matter of law, of negligence merely because he, in the emergency, did not act in the safest way. Under the Federal Employers' Liability Act contributory negligence goes only to the reduction of damages. On behalf of plaintiff the court gave instruction number four, as follows: "Although you may believe and find from the evidence in this case that the plaintiff was guilty of contributory negligence which caused his injury while he was working in unloading said car, yet such contributory negligence will not defeat a recovery entirely, provided you find defendant was negligent. Such negligence, if any has been shown in the evidence, will only go to diminish the damage allowed by you in your verdict." The statute 8 U. S. Comp. 1916, sec. 8659; 35 U. S. 66, on contributory negligence is as follows: "In all actions hereafter

brought against any such common carrier by railroad under or by virtue of any of the provisions of this Act to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee.'' The defendant requested an instruction which was given defining the rule thus: ''Though you may believe that the defendant was guilty of negligence which contributed to the plaintiff's injuries, there and in that event, the plaintiff cannot recover full damages for his injuries so received, but only a proportional amount, bearing the same relation to the full amount as the negligence attributable to the defendant bears to the entire negligence attributed to both the plaintiff and defendant.'' This correctly state the rule. [Cross v. C., B. & Q. Railroad, 191 Mo. App. l. c. 212, 177 S. W. 1127; Norfolk etc. Ry. Co. v. Ernest, 229 U. S. l. c. 122.]

The court of its own motion gave an instruction as follows: ''If you find from the evidence that the defendant was guilty of negligence as defined in these instructions; and if you find the plaintiff was also guilty of negligence as defined in these instructions which partly contributed to the injuries, the plaintiff cannot recover the full damages sustained by him, but only such a proportional amount bearing the same relation to the full amount as the negligence attributable to the *plaintiff* bears to the entire negligence attributable to both.''

The two instructions are conflicting, but such conflict was evidently due to a mere inadvertence on the part of the court in using the word plaintiff in the instruction last quoted, where he clearly intended to use defendant. It will be noticed that the instruction above quoted requested by plaintiff and given directs the jury that plaintiff's negligence goes to *diminish* damages. It will be presumed that the jury read and were familiar with all the instructions, and therefore they could not

have gotten the idea as urged by defendant that the greater plaintiff's negligence, the greater his damages. We think that when all the instructions are considered together the jury could not have been misled by the inadvertent conflict. It is unreasonable to urge that the jury could have gotten the idea that the greater the negligence of the plaintiff, the greater his damages. The error in using the word "plaintiff" where the word "defendant" clearly was intended was merely clerical and is not reversibble error. [Campbell v. Traction Company, 178 Mo. App. l. c. 529, 163 S. W. 287.]

Defendant especially complains of plaintiff's instruction number four set out above. This instruction told the jury that though plaintiff was guilty of contributory negligence "which caused his injury," that this would not defeat recovery, provided they found that defendant was negligent. Defendant requested and the court gave an instruction which told the jury that if they believed and found from the evidence that "plaintiff was guilty of negligence, and that his negligence was the sole cause of his injury, and that defendant was guilty of no negligence contributing thereto," then plaintiff could not recover. Both instructions convey the idea that before defendant would be liable it must be shown to be guilty of negligence contributing to plaintiff's injuries. While plaintiff's instruction is not well worded, yet when read in connection with the others the jury could not have been misled. The cases which defendant cites in support of its contention that plaintiff's instruction is fatally erroneous are cases involving the law of contributory negligence as applied generally, and are not cases involving the effect of contributory negligence under the Federal Employers' Liability Act. Speaking of the contributory negligence provision of the Federal Employers' Liability Act the Kansas City Court of Appeals in Brightwell v. Lusk, et al. 189, S. W. 413 said: "Of this provision it is well said in Penn Co. v. Cole, 214 Fed. 948, 131 C. C. A. 244, that no degree of negligence on the part of an injured servant, however gross or proximate as a matter of law, can bar

a recovery, it being impossible that plaintiff's negligence should equal the combined negligence of both plaintiff and defendant. Consequently the sole issue we must solve on this branch of the case is whether or not the evidence in its aspect most favorable to plaintiff accuses the engineer of negligence, which either with or without negligence of plaintiff was a proximate cause of the injury."

In Hardwick v. Railroad, 181 Mo. App. 156, 168 S. W. 328, a case under the Federal Employers' Liability Act, the court said: "Whatever contributory negligence deceased may have been guilty of cannot be considered as affecting plaintiff's right of recovery, though it may influence the amount. This for the reason that defendant is an interstate carrier and the case is founded on the Act of Congress known as the Employers' Liability Act (35 Stat. 65, c. 149, and amended of April 5, 1910, 36 Stat. 291, c. 143); which, as against an interstate carrier, abrogates the rulers of law obtaining in this State allowing an employee's contributory negligence to bar a recovery of damages, and only allows such negligence to diminish the damages allowed."

Plaintiff's instruction complained of did not tell the jury he could recover independent of defendant's contributing negligence, it provided that he could not recover unless defendant was negligent. Instruction number one for plaintiff set out in what particulars the jury must find defendant negligent before it could find for plaintiff, and we will not assume that the jury ignored this direction merely because these particulars were not repeated in the instruction complained of. Defendant's instruction plainly told the jury that if plaintiff's negligence was the sole cause of his injuries, and that defendant was guilty of no negligence contributing thereto, then plaintiff could not recover. The judgment should be affirmed.

We granted a rehearing in this cause, and it was reargued. In our first opinion we reached the conclusion that the judgment should be affirmed, and so decided, and we do not find that that conclusion was im-

proper. The opinion originally filed is withdrawn, and this one filed instead. The judgment below is affirmed. *Sturgis, P. J.*, and *Farrington, J.*, concur.