## PANHANDLE & S. F. RY. CO. OF TEXAS v. SEDBERRY.

### No. 908.

Court of Civil Appeals of Texas. Eastland.

Feb. 12, 1932.

Douthit, Mays & Perkins, of Sweetwater, for appellant.

Cunningham & Oliver, of Abilene, for appellee.

LESLIE, J.

The plaintiff, Belon Sedberry, instituted this suit against Panhandle & Santa Fé Railway Company to recover damages occasioned him by the alleged negligence of another employee of the defendant. The trial was before the court and jury, and upon answers to special issues judgment was rendered in favor of the plaintiff, from which the defendant appeals.

In substance, the plaintiff's pleadings are that, on or about May 1, 1929, he was employed by the defendant as a laborer, and as such was engaged with other employees of the defendant in repairing and improving the defendant's railroad, which formed a part of a system of interstate railroads known as the Santa Fé system. That while such road was being so used, and while said laborers were extending and constructing a switch used and to be used in connection with the interstate commerce carried over said road, the plaintiff was injured by a cross-tie which he and another employee were, under the directions of the defendant's foreman, carrying to a place where it was to be used as a part of said switch. That the injury was done through the negligence of the other employee in permitting his end of the cross-tie to fall to the ground, the violence of which thereby caused the plaintiff to drop his end of the tie, with the result that the plaintiff's foot was crushed and injured by the tie when it hit the ground.

Among other defenses the defendant entered a general denial, specially denied that the injury ever occurred or was caused by a cross-tie falling thereon, pleaded contributory negligence, assumed risk, and denied that any other employee handled a cross-tie

with him, or that he handled the end of the same so negligently as to cause his end to fall.

The allegations and the proof disclose that the work which the plaintiff was doing when injured was a part of the interstate commerce in which the defendant was engaged. In other words, the suit is properly brought under the Federal Employers' Liability Act (45 USCA §§ 51–59), the injury being attributed to the negligence of a co-employee engaged in that character of service. Federal Employers' Liability Act, U. S. Code, title 45, chap. 2, §§ 51–59 (45 USCA §§ 51–59); Geer v. St. L., S. F. & T. Ry. Co., 109 Tex. 36, 194 S. W. 939; Mondou v. New York, New Haven, Etc., Ry. Co. et al., 223 U. S. 1, 32 S. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Jones v. C. & O. Ry. Co., 149 Ky. 566, 149 S. W. 951.

The defendant's first contention is that the court erred in overruling its request for a peremptory instruction. This is on the ground that the evidence failed to show negligence on the part of the defendant in that no negligence was shown on the part of the plaintiff's employee, who, together with the plaintiff, was engaged in carrying a crosstie when the latter dropped his end, thereby producing the injury complained of. Specifically, it is contended that the plaintiff's testimony merely disclosed an accident, the fact of which created no presumption of negligence on the part of the employer, the defendant. Patton v. T. & P. Ry. Co., 179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 361; Phillips v. Citizens National Bank et al. (Tex. Com. App.) 15 S.W.(2d) 550. The evidence in this respect is not entirely satisfactory. It is involved, and the members of this court are not fully agreed upon the effect to be given the same. Therefore, since the judgment must be reversed on other points, we refrain from discussing or passing on this proposition. On another trial the testimony may be more fully developed and therefore more specific on the fact of negligence.

The second assignment of error is to the effect that the court erred in overruling its motion to require the plaintiff to submit to an examination of the alleged injured foot by physicians selected by the defendant. The plaintiff's pleadings set forth serious injuries resulting to the foot by reason of the accident. In part he alleged: "That by reason of said cross-tie falling on plaintiff's foot, as aforesaid, the arch thereof was broken down and joints dislocated and bones broken, the same being the joints and bones of the arch of the foot and adjacent thereto, and of the ankle joint, and the tendons, ligaments, tissues and muscles of same were strained, bruised and broken, and the same were made sore and painful and caused the plaintiff great pain and anguish; and plaintiff was for weeks in the hospital and was

for a long time unable to walk on said foot, and said condition has continued with more or less severity until the present time; * * * but after working and walking or standing on his said foot for a few days, his foot became swollen, sore and painful and he is compelled to quit using the same and this has prevented him from obtaining permanent employment and in engaging in any kind of work that he can perform for any considerable length of time."

The plaintiff testified fully concerning these injuries—the nature and location as well as the manner in which received. In response to questions by his counsel and in the presence and for the benefit of the jury during such examination, the plaintiff voluntarily removed his shoe and sock from the injured member and exhibited the same to the jury for observation and inspection. The jury observed and inspected the injured parts. In the light of this exhibition to the jury, the plaintiff's attorney questioned him and developed his case, disclosing the same to be one without complete recovery at the time of the trial.

Of course the injured foot was not visible to the jury without the voluntary removal of the shoe and sock, and at the conclusion of plaintiff's testimony, and after he had rested his case, the defendant made its motion to be permitted to have its physicians, who were accessible, to examine the alleged injured foot in order that they might have the benefit of such information on cross-examination and in developing its defense. To this the plaintiff objected, but indicated a readiness to agree to have the court appoint physicians to make the examination, provided they were not in the employment of the defendant, and provided they considered such physicians qualified and competent. Thereupon the court overruled the motion and refused to permit such examination by physicians of the defendant's selection.

The evidence as to the extent of the injury, the period of disability, and the continuing nature of such disability was conflicting, and each point was severely contested. An actual and voluntary exposure of the alleged injured part of the limb was made first by the plaintiff, who thus waived the inviolability of his person. Such step having been taken by him, the court erred in overruling the defendant's motion, but should have granted the defendant the right to have the injured member examined under proper circumstances by physicians of the defendant's selection. The right to do so has many times been upheld in similar cases in this state. Chicago, R. I. & T. Ry. Co. v. Langston, 19 Tex. Civ. App. 568, 47 S. W. 1027; Id., 19 Tex. Civ. App. 568, 48 S. W. 610; H. & T. C. Ry. Co. v. Anglin, 99 Tex. 349, 89 S. W. 966, 2 L. R. A. (N. S.) 386; Bower v. Lively (Tex. Civ. App.) 11 S.W.(2d) 556;

G. H. & S. A. Ry. Co. v. Chojnacky (Tex. Civ. App.) 163 S. W. 1011.

Upon authority of these cases we sustain the second assignment of error. Neither the bill of exceptions nor the record presents anything in the nature of a waiver by the defendant of the rights claimed under this contention.

By assignments 3 and 4 the defendant asserts that the court erred in giving the general instruction in connection with the submission of the special issues on contributory negligence, the vice being the court thereby advised the jury of the legal effect of its answers to such issues. In its answer the defendant claimed that the negligence of the plaintiff in certain particulars was the sole proximate cause of his injuries, and, if not the sole proximate cause, at least, a proximate cause thereof. Certain of the issues and the jury's answers thereto are as follows:

"Special Issue No. 5: Was such injury to the plaintiff's foot caused by any negligent act on the part of the plaintiff? Answer yes or no. No.

"Special Issue No. 6: If you have answered the last preceding question to the effect that injury was caused by some negligent act of the plaintiff, then answer the following: Was such negligence on the part of the plaintiff, if any, the sole cause of such injury, if any? Answer yes or no.

"Special Issue No. 7: If you have answered the last preceding question 'No', and only in that event, then answer the following question: Did such negligence, if any, on the part of the plaintiff contribute to the plaintiff's injuries, if any? Answer yes or no."

Special Issue No. 9 and the charge in connection therewith given by the court were as follows:

"Special Issue No. 9: If you have answered Special Issue No. 7 in the affirmative, and only in that event, then what amount in dollars and cents do you find the plaintiff was damaged by his own negligence, if any?

"In answering the last preceding issue you are instructed that the contributory negligence of the plaintiff, if any, will not bar recovery by him, unless it is the sole cause of his injury, but the total amount of his damages, if any, will in such case be diminished in proportion to the amount of negligence, if any, attributable to him where the negligence so attributed to him is not the sole cause of his injury."

The portion of the instruction following special issue No. 9 was objected to on various grounds: (a) That it advised the jury of the legal effect of their verdict by telling them that the plaintiff would be denied recovery if his negligence was found to be the sole cause of his injuries; (b) that, if such negligence was merely found to have contributed to such injuries, though not the sole cause thereof, it would, in that event, diminish proportionately plaintiff's recovery.

■ It would be difficult to imagine a case in which a general charge or instruction would be more enlightening to the jury upon the legal effect of its answers to the related issues. The jury were at once informed by this charge that the plaintiff's contributory negligence, if found to be the sole cause of his injuries, would defeat any recovery by him whatever, and that such negligence, though not found to be the sole cause of the injuries, would, in any event, if found to exist, diminish his recovery proportionately. The issues arising out of contributory negligence as the sole cause of plaintiff's injuries and out of such negligence as merely a contributing cause to such injuries are not such that ordinary men are presumed to know the legal effect of their answers to the same. The principle involved is that of comparative negligence. This general charge should not have been given. It improperly transmitted to the jury information about which it was not and should not have been concerned, in view of the fact that the case was being submitted on special issues, and no question of proper explanation or definition of a legal term being involved.

In the case of T. & P. Ry. Co. v. Edwards et al. (Tex. Com. App.) 36 S.W.(2d) 477, it was held reversible error for plaintiff's counsel, in his argument, to inform the jury of the legal effect of a finding on an issue of contributory negligence, and in the case of Texas Indemnity Ins. Co. v. Davis (Tex. Civ. App.) 32 S.W.(2d) 240, 243, it was held that such error was more pronounced where such information came from the court in his charge. In that opinion this language is used: "It is settled by our decisions that it is error for an attorney to advise the jury how to answer special issues in order for his client to recover unless the issues are such that an ordinary juror is presumed to know the effect of such answers without such advice. Such information coming from the court in his charge, although in the utmost good faith, would, in our opinion, be much more prejudicial than such information coming from a lawyer in his argument and as a matter of law would probably result injuriously to the opposite side."

Without undertaking to suggest what, upon another trial, would be a proper form in which the issues of negligence and contributory negligence should be presented in a case like this, we take occasion to refer to the form in which such issues were submitted in the case of K. C. M. & O. Ry. Co. v. Estes (Tex. Civ. App.) 203 S. W. 1155; Id. (Tex. Com. App.) 228 S. W. 1087. That case, like this, presented issues arising out of

comparative negligence, and while the issues there employed may not, under all the circumstances, be adapted to use on a trial of this case, they at least suggest that such issues may readily be submitted without employing a general charge in explanation of the effect of the jury's answers.

■■ By assignment No. 5 the defendant insists that issue No. 1 is multifarious, and by assignment No. 6 that issue No. 2 is duplicitous, assumed disputed facts and issues in favor of the plaintiff, and amounted to a comment on the weight of the evidence. The questions suggested are not free from difficulty, but we have concluded that the issues do not so clearly embrace the vice alleged that they should be condemned as erroneous. Since the judgment must be reversed on other grounds, it is suggested that these issues on another trial be submitted in form more free from the criticism here alleged. This can well be done if it be borne in mind that the defendant contests every phase of the plaintiff's cause of action. The defendant specifically contends: (1) That no injury was sustained by the plaintiff while in its employment; (2) that, if any character of injury was sustained, it was not inflicted by a falling cross-tie; (3) that no one of its employees assisted the plaintiff in the carrying of a cross-tie; (4) that the injury, if any, was caused by a shoe for which the defendant was not responsible; and (5) that, at the time the injury, if any, was sustained, plaintiff was not engaged with any other of defendant's employees in carrying a cross-tie at all.

These are some of the respects, at least, in which the plaintiff and the defendant disagree, and reference to them is here made as a suggestion that the ultimate issues as presented on another trial should avoid assuming the truthfulness of any disputed issues in favor of either party. Certainly the court has no authority to assume the truth of any material and controverted fact. Texas P. & L. Co. v. Culwell (Tex. Com. App.) 34 S.W.(2d) 820; Law of Special Issues (Speer) § 195, p. 254. That issues should be so framed as to avoid the vice of being duplicitous or multifarious is elementary.

■ The seventh assignment of error raises the question of inflammatory and prejudicial argument by the plaintiff's attorney in his opening address to the jury. The point as preserved we take from the bill of exceptions agreed to by the attorneys and approved by the court. The objectionable language is:

" 'Now listen, I don't believe a word that Woods said, but if there ever was a time in the world when a poor man, and I say poor, because the evidence shows he is poor, their testimony shows it—that he picked cotton and grubbed before he was injured, and pulled bolls after he was injured, and that after that a poor farmer boy went there and agreed to

and did work with a section gang, composed of whom—white men? Oh, the defendant wants you to believe that that fellow Juan would swear the truth and here he was not observing the color line and making the plaintiff work with negroes and Mexicans. Under those circumstances, if there ever was a poor boy on earth that felt that he could not get a fair deal, that he would not be at arms' length with a great corporation, under those circumstances, it is this man.'

"That at that point counsel for defendant objected to said argument on the ground that same was prejudicial, inflammatory and improper, and asked the Court to instruct the jury not to consider it. Thereupon the Court did instruct the jury not to consider said argument. Thereupon plaintiff's said counsel proceeded, using the following language:

" 'The proof is this corporation is just a part of the Santa Fe Railway System, that extends from Galveston to Chicago and from there across into California. The truth is that they were building this system, extending this switch for the purpose of handling interstate commerce. The proof shows that the plaintiff was so poor that he had to pull bolls and pick cotton and grub roots and work on a section gang with negroes and Mexicans and white men. You know that they put the negroes in it. We did not. I do not believe they were there at all—they put the men on there and they said he said it was two negroes. Why, I said, "they didn't have any negroes"—"Yes, we did," and they said he was a Mexican, Juan,—the gentleman looked like a Mexican, he could not hardly talk. No, I am not appealing to your prejudice, but to your honor and fairness. I tell you these are the facts and circumstances that surround the plaintiff on the one side and the defendant on the other, and all I ask in the world is justice, just sheer justice, just simple justice to a poor boy.'

."That there was no evidence to justify and that there was no evidence upon which such argument could have been founded to the effect that plaintiff was made work with negroes and Mexicans; that the following argument: 'Under those circumstances, if there ever was a poor boy on earth that felt that he could not get a fair deal, that he would not be at arms' length with a great corporation, under those circumstances, it is this man,' was not justified by the evidence, and that there was no evidence upon which such argument could have been founded; that none of the argument above set forth was provoked by counsel for defendant, this being the first argument made in the case and the opening speech."

The harmful and prejudicial effect of this argument is apparent in the light of the decisions. See the following and the authorities cited therein: Nicholson v. Nicholson (Tex.

Civ. App.) 22 S.W.(2d) 514; Bell v. Blackwell (Tex. Com. App.) 283 S. W. 765; City of Austin v. Gress (Tex. Civ. App.) 156 S. W. 535; Union Ins. Co. v. Alsop (Tex. Civ. App.) 1 S. W.(2d) 921, 922; T. & P. Ry. Co. v. Rasmussen (Tex. Civ. App.) 181 S. W. 212; Motley v. Lawrence (Tex. Civ. App.) 283 S. W. 699; Trueheart v. Parker (Tex. Civ. App.) 257 S. W. 640; Floyd v. Fidelity Union Casualty Co. (Tex. Com. App.) 24 S.W.(2d) 363.

It does not affirmatively appear from the record that the argument was or became harmless. 3 Tex. Jur. § 883.

This assignment is sustained.

For the reasons assigned the judgment of the trial court is reversed, and the cause remanded.