Before STATE INDUSTRIAL BOARD, Respondent.

In the Matter of the Claim of MATTHEW QUIRK, Respondent, for Compensation under the Workmen's Compensation Law, v. ERIE RAILROAD COMPANY, Employer and Self-Insurer, Appellant.

Third Department, November 15, 1922.

Workmen's Compensation Law — interstate commerce — test of employment in interstate commerce is whether employee was engaged in interstate commerce at time of injury — employee was engaged on interstate railroad cleaning ashes, cinders and scrap from tracks in yard, also cutting grass and weeds — while cleaning ashes, etc., on or near track employee was engaged in interstate commerce — while cutting grass and weeds he was not engaged in interstate commerce — evidence justifies finding that employee was not engaged in interstate commerce at time of accident.

The test for determining whether a railroad employee was engaged in interstate commerce at the time he suffered an injury is the nature of the work being done at that particular time.

The claimant, who was employed about an interstate railroad yard, was engaged in interstate commerce while at work preventing the accumulation of ashes, cinders, coal and scrap on the track or so near thereto as to endanger the safety of the operation of interstate trains or of those employed in operating them.

But so far as his duties related to cutting grass and weeds and other work for the purpose of beautifying the yard, he was not engaged in interstate commerce.

The evidence justifies the finding of the State Industrial Board that at the time the claimant was injured by a passing interstate train he was engaged in cutting grass and weeds and was not, therefore, engaged in interstate commerce.

KILEY and HASBROUCK, JJ., dissent.

APPEAL by the defendant, Erie Railroad Company, from a decision and award of the State Industrial Board, made on the 13th day of April, 1922.

*Wales & Meagher* [*Frederick J. Meagher* of counsel], for the appellant.

*Charles D. Newton, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondents.

HINMAN, J.:

The claimant was employed by the Erie Railroad Company. He was classified as a track laborer but it is undisputed that for three years he had done no work in laying ties, or tamping ties, or track work, but had been assigned to cleaning up the railroad yard at Deposit. The claim agent says that " his work consisted of this cleaning up, hoeing cut grass and weeds and cleaning around the switches and such work as that and he was working at this time with a hoe and shovel." He says: " there would be enough grass and weeds in the yard there to keep him busy; " and " that the yard extends possibly half a mile long and several tracks wide." The section foreman said that his work was to clean up around the yard, " removing ashes, cleaning weeds and cinders." He says that the claimant was " raking up " when he last saw him that morning. The claimant says that his work was " cutting grass and cleaning up cinders; picking up scrap." By " scrap " he says he means " spikes, drawheads and all things like that " which would be " dropped out of cars." He says that it was his duty to remove these and expresses the opinion that if he left them, or ashes, or chunks of coal, to accumulate on or between the tracks, there was likelihood of accident to trains, or men employed on trains, or in the yard. He says that he got more of the scrap on the main line tracks than anywhere else. The foreman of the section gang testified that the accumulation of ashes and coal would affect the safety of the operation of trains especially in winter. The accident in question, however, happened in July.

It seems to have been conceded by both the claimant and the

railroad that the work in which the deceased was engaged had a two-fold purpose, one was to beautify the yard by keeping it clean and the other was to protect against danger in the operation of trains or against injury to employees so engaged or employed in the yard.

On the morning in question the claimant had been at work on the main east-bound track used in interstate commerce from seven A. M. to about eleven A. M., and then for about one-half hour was engaged on a switch track adjoining this main track and which unquestionably was likewise used in interstate commerce. At about noon, the time of his injury, he was working between this east-bound main track and said switch track and had with him a wheelbarrow and a hoe and a shovel. He was standing near enough to the main east-bound track so that a rod, perhaps a brakerod of a car, which apparently had become loosened and extended from the side of a car, caught him as the train was going by on this main track and drew him under the train causing him to lose one of his legs.

The sole question in the case is as to whether the claimant was engaged in interstate commerce at the time of his injury. The test is the nature of the work done at the time of injury. Was the work that was being done by the claimant interstate in its character or so closely connected therewith as to be a part of it? (*Pedersen* v. *D., L. & W. R. R.,* 229 U. S. 146; *Shanks* v. *D., L. & W. R. R.,* 239 id. 556; *New York Central R. R.* v. *Carr,* 238 id. 261.) So far as the claimant's work related to the prevention of the accumulation of ashes, cinders, coal and scrap on the main track or the switch track or so near to either as to endanger the safety of the operation of trains or of those employed in such operation thereon, the character of the claimant's employment was so closely connected with interstate commerce as to be a part of it. To that extent his duties were interstate in character. So far as his duties related to the cutting of grass and weeds and the removal of the same, there is no testimony tending to indicate that such duties had any relation to the safety or the efficiency of the operation of trains, or had any relation to interstate commerce, or even intrastate commerce.

The State Industrial Board was not obliged to believe that grass and weeds growing there could or would have any relation to the operation of trains. In fact it seems to have been conceded that so far as this phase of the claimant's work was concerned, it was for the purpose of beautifying the appearance of the yard and to make it look clean. If this was the sole thing that was being done by the claimant at the time of his injury, it seems clear that he was not engaged in interstate commerce. (*Matter of Plass* v. *C. N. E.*

*R. Co.*, 226 N. Y. 449; *Galveston, H. & S. A. Ry. Co.* v. *Chojnacky*, [Tex. Civ. App.] 163 S. W. Rep. 1011, 1013.)

The claimant alone testifies as to just what he was doing at the moment of his accident. His testimony is not as clear as it might be in the differentiation between his two classes of employment, but so far as he seems to be specific in his answers, the clear indication is that he was cutting and cleaning up grass. He testifies: " Q. What were you doing at the time it hit you? A. Cleaning up grass." And again: " Q. Do you remember just what you were doing at that particular minute? A. Cutting grass and cleaning up, I think."

We think that there was some evidence to sustain the conclusion of the State Industrial Board that at the time of his injury the claimant was not engaged in interstate commerce.

The award should be affirmed, with costs in favor of the State Industrial Board.

H. T. KELLOGG, Acting P. J., and VAN KIRK, J., concur; KILEY and HASBROUCK, JJ., dissent.

Award affirmed, with costs in favor of the State Industrial Board.