GALVESTON, H. & S. A. RY. CO. v. CHOJNACKY.

(Court of Civil Appeals of Texas.  San Antonio. Feb. 20, 1914.)

1. DAMAGES (§ 206*)—PHYSICAL EXAMINATION—WOUNDS AND OTHER INJURIES.
   Where plaintiff, in a personal injury action, at the request of the jury after both sides had rested, removed dark glasses from his eyes, and offered them for the inspection of the jury, he thereby waived the inviolability of his person, and it was error to refuse defendant's request for an examination by experts.
   [Ed. Note.—For other cases, see Damages, Cent. Dig. § 531; Dec. Dig. § 206.*]

2. MASTER AND SERVANT (§ 265*)—ACTIONS FOR INJURY TO SERVANT—BURDEN OF PROOF—NEGLIGENCE ON PART OF MASTER.
   When a servant sues his master for an injury caused by the negligence of the master, the servant must prove the negligence and proof of the accident, and injury only will not authorize a recovery.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908, 955; Dec. Dig. § 265.*]

3. COMMERCE (§ 27*)—INTERSTATE COMMERCE—SUBJECTS OF REGULATION.
   An assistant gardener, employed by a railroad company engaged in interstate commerce to cultivate the yard about one of its stations and gather trash and burn it, is not engaged in interstate commerce.
   [Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*]

4. MASTER AND SERVANT (§ 265*)—ACTION FOR INJURY TO SERVANT—BURDEN OF PROOF—CONTRIBUTORY NEGLIGENCE.
   In an action by a servant for an injury, the burden is upon defendant to prove contributory negligence.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908, 955; Dec. Dig. § 265.*]

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Action by John Chojnacky against the Galveston, Harrisburg & San Antonio Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Baker, Botts, Parker & Garwood, of Houston, and Templeton, Brooks, Napier & Ogden, and W. F. Ezell, all of San Antonio, for appellant. Don A. Bliss, of San Antonio, for appellee.

FLY, C. J. Appellee sued to recover damages alleged to have accrued through the negligence of appellant in allowing a torpedo or other explosive to be present in paper and other refuse, which it became incumbent on him to burn in pursuance of his duties as an employé of appellant. Appellant pleaded contributory negligence and assumed risk. A trial by jury resulted in a verdict and judgment in favor of appellee for $9,000.

[1] In this case appellee claimed that his eyes were seriously and permanently injured through the explosion of some substance that was among paper and other trash gathered about the station of appellant in San Antonio. During the trial appellee wore dark glasses, and it seems that during a recess of the court two jurymen expressed to the trial judge their desire to have appellee take off his glasses and let the jury see his eyes. This occurred on Saturday afternoon, after both parties had closed their testimony, and after the case had been postponed for the argument until the succeeding Monday morning, and the judge informed appellee's attorney of the request of the jurors, and asked him to inform counsel for appellant. This was not done, but Monday morning appellee was called before the jury by his attorney and caused to remove his glasses, so that his eyes could be inspected by the jury. Before, at the time, and after the inspection took place, appellant claimed the right to have doctors, who might be selected by it, to examine the eyes of appellee. Counsel for appellee objected to the examination because there was no decision holding that, after a plaintiff exhibits his person to a jury, a defendant has the right to have his person inspected by experts, and because he had a case for trial in Sherman, Tex., and he had to start Monday night to reach there on Tuesday afternoon, and, if an examination was allowed, he could not reach Sherman in time. The court refused to permit an examination. A physician had testified that he had treated appellee's eyes, and had in January, 1913, discharged him from treatment, and he "could find nothing that would hinder him from seeing as a person normally ordinarily would." He also stated that with instruments he could look into the eyes and see whether they were injured or defective. Appellee testified: "I could not see at all immediately after the accident, it was about six weeks later before I could see even a yellow light—passed in front of me all the time—my eyesight is just about the same ever since; both eyes just alike, see just as well with one as with the other, no difference in the sight, no difference at all; the smallest object I can see is a person; I can just see the shadow of a person, about 10 feet—no object smaller than a human being, not even shadow." He testified that he could not see a man's hand held before him. Under this state of facts it became very important that appellant should be able to contradict the statements of appellee. The most effective way to contradict the testimony of appellee was to have an examination of his eyes by experts, who could test the extent of

his vision. But that examination could not, at any time, be demanded by appellant unless appellee permitted an inspection of his eyes by the jury. The moment, however, that he submitted his eyes for examination to the jury, he doffed the armor placed on his person by the hand of the law, and was the subject of examination of experts.

The leading case in Texas on the subject under consideration is Railway v. Langston, 19 Tex. Civ. App. 568, 47 S. W. 1027, 48·S. W. 610, in which the able opinion of a majority of the court was delivered by Associate Justice Stephens. The case went to the Supreme Court on a dissent, and the·majority opinion was affirmed. 92 Tex. 709, 50 S. W. 574, 51 S. W. 331. It was cited and approvingly quoted from in the case of Railway v. Anglin, 99 Tex. 349, 89 S. W. 966, 2 L. R. A. ·(N. S.) 386. The rule enunciated by the Court of Civil Appeals and approved by the Supreme Court is as follows: "But inasmuch as appellee invited an inspection and examination of her wounded limbs . by making profert of them on the trial, we have finally concluded that the case presents a different question from that so often considered, and that its solution should not be influenced by our cherished Anglo-Saxon principle of personal security. In our opinion it would be a perversion of that principle to apply it in a case like this, where the plaintiff, unfortunate and pitiable though she may be, voluntarily lays bare before the court and jury her afflicted members for the inspection of judge, jury, and advocate. For all the purposes of the trial she thus waived her right to object, upon the ground of an invasion of her right of personal security, to a reasonable and proper examination, under the direction of ·the court, of the wounded parts. She thus, by her own voluntary act, conferred upon the court jurisdiction to compel what otherwise she might have refused to submit to. Having conferred the jurisdiction, she could not take it away at pleasure without trifling with the court. It lasted as long as the trial lasted." The Supreme Court said: "The rule acted upon in that case that, where a party has once exhibited his person to the jury to show the extent of his injuries, he may be required during· the course of the trial to re-exhibit them has never been modified by this court."

Rule 62a (149 S. W. x) cannot be applied in regard to what might have been the result of the inspection and examination of the eyes of appellee by experts, because appellant could not set out what the result of the examination would be. It had been shown that the eyes of appellee were in a normal condition when he was last treated, some four or five months before the trial, but he swore that he was almost blind at the time of the trial, leaving the inference, either that the physician who treated him was mistaken about the condition of his eyes, or they had changed much for the worse since his exam-

ination. Appellant had no way to refute either theory, except by an examination of the eyes, but that examination could not be had at any time before or during the trial until appellee invited an inspection of his eyes by the jury. What their apparent condition may have been no one but appellee or the jurors could know, in the absence of an examination by experts. The eyes may have had an inflamed appearance, or the pupils may have been dilated so as to give them an abnormal appearance, and yet there may have been no organic trouble which would permanently affect the vision. However that may be, when appellee offered his eyes for inspection to the jury, he waived the right of inviolability of his person, and appellant had the right to demand and be given an examination of his eyes by experts of its own selection. Appellee had the right to exhibit his person to the jury, and an objection to such exhibition by appellant could have availed nothing. Appellant might have waited until the inspection was made before claiming the right of examination, but appellee was given notice before the inspection that an examination would be demanded. The court had no discretion as to permitting or refusing the examination of appellee's eyes, but when profert was made of his eyes by appellee, the right to an examination became absolute under the facts of this case, no matter if it did delay the trial or inconvenience counsel. Delay and inconvenience amount to nothing when the·attainment of justice is the end in view. The Missouri cases cited by appellee refer to orders of the court requiring an examination of wounds, and recognize the right to such examinations without the consent of the injured parties, but make such examination conditional on convenience of the court and prompt demand for such examination upon the part of defendants.

The case of Railway v. Underwood, 64 Tex. 463, was rendered at a time when the Supreme Court held that an examination of the person of a plaintiff in a personal injury suit could be demanded by the defendant, but held that the motion for an examination was insufficient. We have seen no case in which an examination was refused when profert of the wounded· part of the body had been made. If the demand was made only after the argument to the jury had begun, it was because the inspection was never made until that time, and, if delay would have been caused thereby, appellee caused the delay. The inspection was made after the evidence of both parties had closed, and appellee reopened the case by offering other testimony.

[2] We do not desire to comment on the evidence, as the case will be sent back for another trial. The court held that the evidence was sufficient to take the case to the jury, and appellee may have been induced thereby not to produce testimony which tended to show clearly that the explosives were

among the trash through the negligence of appellant, or that their presence in the trash should have been known by appellant. "It is the general rule that, when a servant sues his master or employer for damages arising from injuries caused by the negligence of the latter, the plaintiff must prove the negligence of the defendant, and that proof of the accident and injury alone will not be sufficient to authorize a recovery." That is the rule laid down by the Supreme Court in McCray v. Railway, 89 Tex. 170, 34 S. W. 96, but the qualification sought to be made, to the effect that "the circumstances attending the injury may be sufficient to establish the fact of negligence without any direct proof thereof," amounts to nothing but a statement that the negligence, as any other fact in any case, can be proved by circumstantial evidence. Broadway v. San Antonio Gas Company, 24 Tex. Civ. App. 603, 60 S. W. 270. Negligence of the master must be proved by direct or circumstantial evidence.

[3] We cannot go to the extent of holding that an assistant gardener employed, by a railroad company engaged in interstate commerce, to cultivate the yard about one of its stations, and gather trash and burn it, is engaged in interstate commerce. The Supreme Court of the United States may go to that extent, as it has gone to extreme lengths in depriving the states of control over railroads operating within their borders, but it may be hoped that better counsels will prevail, and the advance of judicial centralization be stayed; for, while the Supreme Court in a late case refused to commit itself as against further aggression upon the rights of the states in controlling railroads, it did not commit itself further in the other direction. Grand Trunk R. R. Co. v. Michigan Railroad Com'rs, 231 U. S. 457, 34 Sup. Ct. 152, 58 L. Ed. ——. The court sustained the right of the Michigan Railroad Commission to control the interchange of traffic between an interstate road and intrastate roads, and said: "We will not dwell on the contention of appellants that Congress has taken over the whole subject of terminals, team tracks, switching tracks, sidings, etc. We need make no other comment than that it cannot be asserted as a matter of law that Congress has done so." The state law is applicable on the subject of assumed risk under the facts of this case.

The eighth and ninth assignments are overruled. The law as to assumed risk was properly given in the charges as to which complaint is made.

[4] The eleventh assignment is overruled. There was nothing in the testimony of appellee that tended to show contributory negligence, and the burden rested on appellant to show contributory negligence.

For the reasons herein given, the judgment is reversed and the cause remanded.