**TEXAS EMPLOYERS' INS. ASS'N v. HATTON.**

No. 4884.

Court of Civil Appeals of Texas. El Paso.

July 9, 1952.

Rehearing Denied July 30, 1952.

Burford, Ryburn, Hincks & Ford, Dallas (Logan Ford and Clarence A. Guittard, Dallas, on brief), for appellant.

Sam Holland, Athens, White & Yarborough and Donald V. Yarborough, Dallas, for appellee.

SUTTON, Justice.

This is a workmen's compensation case and comes from the 95th District Court of Dallas County.

The plaintiff's suit is predicated on an injury to his right foot. The case was tried to a jury on the facts and on favorable answers to special issues judgment was rendered for compensation for 208 weeks for total incapacity at the rate of $25 per week, and for 193 weeks for 75% permanent partial incapacity at the rate of $22.50 per week, from which judgment this appeal is prosecuted.

. The defendant in its brief states the only contested fact issues relate to the extent and duration of the injury, and whether or not it extended to and affected other parts of his body.

Eight points of error are presented, the first of which is the trial court erred in refusing to permit defendant's doctor to demonstrate the freedom of movement in plaintiff's toes, foot and ankle and the absence of pain therein by manipulating same in the presence of the jury, plaintiff having previously exhibited his foot and ankle to the jury.

The testimony is a heavy board fell on plaintiff's foot and injured it seriously, breaking the first, third, fourth and fifth metatarsal bones. Plaintiff testified he could not move his toes since the accident; that he has pain in his foot; limps when walking, and that his back hurts. There is medical testimony the bones in his foot are fused, or grown together, resulting in a stiffening of the foot and a loss of some joints in the foot. The medical opinion differs as to the extent of the fusion and the extent of the limitation in use.

On direct examination plaintiff's counsel requested him to take off his shoe and sock and exhibit his foot to the jury, and had him demonstrate to the jury how far he could turn the foot toward the floor. He indicated and said he could get it no further than a horizontal position. This

testimony is shown on pages 98 and 99 of the Statement of Facts. At a later time in the course of the trial while one of the defendant's doctors was testifying counsel for defendant requested the doctor to exhibit to the jury and demonstrate the motion and lack of motion and limitation, if any, in plaintiff's foot, whereupon plaintiff's counsel objected to any medical examination unless the same be had as provided by statute. The objection was sustained. Counsel continued, saying he had no objection to the doctor observing both feet and testifying about them but did object to a medical examination by manipulating them unless it be done in accordance with the statutory provisions.

■ The foot was the only injured portion of the body. Other complaints had were but indirect results of the foot injury. It is apparent, we think, the examination proposed was little less, if any, than a complete examination and inquiry into the injury complained of and made the basis of the claim and suit and could not have well been confined to anything else than a full and complete examination involving both sides, and one which the Court might in its discretion decline to indulge. Wallace v. Hartford Accident & Indemnity Co., 148 Tex. 503, 226 S.W.2d 612; Eubanks v. Texas Employers' Insurance Ass'n, Tex.Sup., 246 S.W.2d 467; Associated Employers Lloyds v. Tullos, Tex. Civ.App., 197 S.W.2d 210, r. n. r. e.

However, immediately following the rejection of the proposal to examine the foot by flexing it, etc., plaintiff bared both feet and the doctor had him stand up and turn around, etc., and gave testimony concerning his conclusions from the observations thus made.

The second point complains of the definition of "personal injury" because of the addition of the words, "and includes traumatic neurosis, if any, or hysteria, if any, resulting from the injury in question," to the statutory definition.

■■ In the course of the examination of the medical witnesses called by the defendant, two of them, they testified in their opinion plaintiff was suffering from hysteria or neurosis as a result of the injury and pendency of the suit which would probably improve after the termination of the litigation. There was no pleading covering any such disability, but plaintiff sought and was granted permission to set it up in a trial amendment and based upon the testimony thus elicited the court enlarged the statutory definition to include the hysteria and neurosis. We think there is no error presented, because it is not a comment on the evidence, as is claimed, but a mere instruction such disability, if any, may be taken into consideration by the jury and such has been held to be compensable, Hood v. Texas Indemnity Insurance Co., 146 Tex. 522, 209 S.W.2d 345, as a disabling result flowing from the injury received. Enlargements of the statutory definition to include incitement, acceleration or aggravation of a prior or subsequent disease resulting from the injury have been sustained.

Southern Underwriters v. Parker, Tex. Civ.App., 129 S.W.2d 738, e. r.; Texas Employers Insurance Ass'n v. Wright, Tex. Civ.App., 118 S.W.2d 433, dismissed; Liberty Mutual Insurance Co. v. Murphy, Tex. Civ.App., 205 S.W.2d 398.

■ Complaint is also made that the court erred in permitting plaintiff to read, over objection, that portion of his petition wherein it is alleged he had agreed to pay his attorney one-third the recovery.

It is pointed out in this connection the defendant stated in open court it would agree the compensation should be paid in a lump sum if plaintiff should be found to be permanently and totally disabled. This fact or agreement cannot control the situation. Rule 265, Texas Rules of Civil Procedure, provides the petition and answer shall be read to the jury and makes no exception. The pleading is necessary and it has been held it is not error to read it.

Employers' Liability, etc., v. Sims, Tex. Civ.App., 67 S.W.2d 445, err. ref.

During the closing argument plaintiff's counsel said:

"Now gentlemen, he (defendant's counsel, as we understand it) said something about this allergy just

cleared up, and Mr. Hatton says it did not. He says the stuff still breaks out on him, but that is not the main thing anyway. I just want to call your attention to some testimony by Dr. Paine about which I have had the Court Reporter transcribe; in the first place I want you to remember this, that no witness testified he did not have it now."

Objection was made:

"We object to that, his own sister, Mrs. Doris Crawford, testified she never saw any after he left the hospital. I challenge that statement in this record, his own sister says as far as she knew he was healed after he left the hospital. * * * We challenge that with the record."

The Court told the jury at this point they would be the judges as to what the evidence will be, and not consider what the attorneys say the evidence is, but you yourselves will take what the evidence actually is, whereupon counsel said:

"We take exception to the Court's failure to determine what the record is and correctly state what it is under the record."

Plaintiff's counsel stated if he be mistaken in it he wanted the jury to be guided by the evidence and that was his interpretation of it. The Court then declined the request. Defendant in its brief says the argument objected to was the last clause quoted above,

"In the first place I want you to remember this, that no witness testified he did not have it now."

Other testimony from Dr. Paine was repeated immediately wherein he stated the allergy recurred after the plaintiff left the hospital.

It becomes at once obvious it would be very difficult to verify this point by the record and more especially in this case where there are some 500 pages of oral testimony. In the light of the record here there was certainly no abuse of discretion in failing to stop the argument and check the record, after counsel admitted he might

be mistaken and if it were the jury could disregard it.

The trial of this case was commenced on May 7, 1951; the verdict was returned on May 11th; the judgment was rendered July 23, 1951; the first amended motion for a new trial was filed August 22, 1951; and among other things the defendant set up as a ground for a new trial the discovery of new evidence, and assigns error because of the failure to grant a new trial because of the discovery of new evidence. It is asserted that plaintiff's deposition was taken prior to the trial and in response to an inquiry as to whether or not he had had any prior injuries he stated he had not; that the original of the deposition was delivered to plaintiff's attorneys and a copy to defendant's attorney. Apparently the deposition was not used on the trial but after the trial and rendition of the judgment it was discovered that the answer to the question about prior injuries was changed from "No, sir" to "Yes, sir". There were no affidavits to any facts attached to the amended motion for a new trial. In support of the point reference is made to a portion of an affidavit made by E. J. Sullivan, described as defendant's investigator, on September 10, 1951. The affidavit had been received in evidence over objection on the hearing of the amended motion for a new trial. The statements relied on and copied in the brief are that in an interview had by the affiant with the plaintiff, plaintiff told him he had sustained an injury "a few years ago" to his left foot when his big toe on the left foot was nearly torn off; that he removed his shoes and socks from both feet and affiant observed them and the left looked much more mangled than did the right; that he had wrecked a car March 14, 1950, by driving it off of a bridge into a creek and water and he had had a foot X-rayed at the insistence of his father, but no statement is made as to what the X-ray reflected. The copied portion of the affidavit states also that plaintiff said "the cast from the injury received at Keetch Metal Works was on his foot at the time of this accident," but the copy makes no further ref-

erence to the Metal Works accident; that when a boy he fractured a bone in his leg. It is also stated plaintiff admitted an accident near Kilgore "several weeks ago", but gave no details. We are referred also to an affidavit made by plaintiff and introduced at the hearing on the motion. We have examined that.

In plaintiff's affidavit he denies much of the statement made by Sullivan, saying he had never had a fractured leg; that he did not have an accident in 1944 or 1945, but in the year 1936 or 1937 he cut his big toe on a planter, but completely recovered shortly thereafter and had worked for twelve years since without any difficulty; that his left foot was never mangled and showed no evidence of mangling, but only a scar is on the side of the big toe. He said he had had an injury at Keetch Metal Works November 29, 1949. He denied having run into a creek but said he was in a car that ran into a ditch but no injury was done and he did not see a doctor. This presentation from the record does not demonstrate reversible error.

■ It may be noted here that on the trial of the case plaintiff exhibited his left foot as well as his right to the Court and jury; that the Doctor gave certain testimony from his observation of the feet and he stated the right was smaller than the left as the result of the limited use of the right because of the injury. The ex parte affidavit of Mr. Sullivan does not constitute any proof nor establish any fact. The Court was compelled to disregard it and it is presumed he did, and with it all the proof relied upon to sustain the point falls. The Court was called upon to pass on the facts presented to him and may have concluded, as he had the right to do, the evidence was of such character it would not probably change the result on another trial.

■ Defendant on August 22, 1951, filed a motion to re-take plaintiff's deposition, setting up under oath the facts with respect to taking the first deposition and the answer he had not previously been injured, as we have heretofore detailed. The Court declined to grant the permission and the refusal is assigned here as error. There had been ample opportunity to make the investigations that led to the discoveries defendant claims to have made, prior to the trial; defendant knew under Rule 209, R.C.P. plaintiff had the right to change his answers and make corrections before he signed his depositions but no inquiry was made with respect to any changes. Plaintiff was examined at great length on the trial and no inquiry was made with respect to any changes or the inquiry renewed as to prior injuries. Under such a record the Court was within his discretion in refusing to them permission to retake the deposition. After all there must be an end somewhere to a trial and the taking of testimony.

■ In the course of the cross-examination of a Dr. Hurt, an Osteopath, testifying for plaintiff, he was examined at some length as to whether or not he took the same examinations taken by M. D.s; if he writes prescriptions, gives penicillin, etc., to which affirmative answers were given. During such inquiries plaintiff's counsel broke in and asked if the late President Roosevelt's personal physician were not an Osteopath, to which an affirmative answer was likewise given. This question and answer were objected to as being immaterial and irrelevant and is assigned here as error. It is clearly harmless in all events, but had no place in the case, but it could not have influenced an intelligent jury.

■ The last complaint is the court erred in giving the following instruction to the jury:

"In arriving at your verdict you will not attempt to credit same with the payments heretofore made by the defendant because that is a matter that the judge will give credit for, if any judgment is rendered for the plaintiff, Arthur C. Hatton, in this case."

The objection is the instruction "gives judicial credence to the plaintiff's theory of the case, namely, that he was entitled to compensation for a longer period of time than thirty-five weeks (that being the period of time during which payments were made); that no issue was submitted or

instruction given in connection with any of the issues which would in any way indicate to the jury that they should deduct or otherwise allow for any compensation paid. As given the instruction clearly suggests to the jury that Arthur C. Hatton was in fact injured and that the disability from such injury amounted to more than thirty-five weeks."

It is not disputed but admitted that plaintiff sustained an injury and a serious one for which the defendant paid compensation for 35 weeks. We do not believe the instruction is subject to the interpretation placed upon it. The effect of it is to say to the jury they should not take into consideration the amounts previously paid in arriving at their verdict and if a judgment be rendered for the plaintiff the judge would give the proper credit. It was calculated to be more helpful than harmful, because the jury might have regarded the payments as admissions of liability.

It is our conclusion there is no reversible error shown and the judgment of the trial court is affirmed.