TEXAS EMPLOYERS INSURANCE ASSOCIATION
V. ARTHUR C. HATTON.

No. A-3837. Decided February 11, 1953.
Rehearing overruled March 25, 1953.
(255 S. W. 2d Series 848)

200

Burford, Ryburn, Hincks & Ford, Logan Ford and Clarence Guittard, all of Dallas, for petitioner.

The Court of Civil Appeals erred in holding that the allegation concerning plaintiff's attorney's fee could properly be read to the jury over defendant's objection, where there was no issue presented on lump sum recovery; in holding that the trial court had discretion to refuse to permit defendant's medical witness to demonstrate the freedom of movement in plaintiff's foot by manipulating same in front of the jury after plaintiff had waived his immunity by voluntarily exhibiting his foot and attempting to demonstrate the loss of motion therein. White Cabs v. Moore, 146 Texas 101, 203 S.W. 2d 200; Texas & Pac.

Ry. Co. v. Gillette, 125 Texas 563, 83 S.W. 2d 307; Wallace v. Hartford Acc. & Indm. Co., 148 Texas 503, 226 S.W. 2d 612.

*Sam Holland,* of Athens and *White & Yarbrough* and *Donald V. Yarbrough,* all of Dallas, for respondent.

In reply to petitioner's point cite Texas Emp. Ins. Ass'n. v. Long, 180 S.W. 2d 629, Error refused for want of merit; American Gen. Ins. Co. v. Ariola, 187 S.W. 2d 585, Refused, want of merit; Eubanks v. Texas Employers Ins. Ass'n., 151 Texas 67, 246 S.W. 2d 467.

MR. JUSTICE CULVER delivered the opinion of the Court.

In this workmen's compensation case the issue, rather sharply drawn, was whether the concededly serious injury suffered by respondent was confined to his foot and leg or as contended by respondent affected adversely other parts of his body, principally his back and hip, by reason of which he claimed total and permanent disability.

Based on the jury's verdict favorable to respondent, judgment was rendered against petitioner, Texas Employers' Insurance Association, for 208 weeks of total incapacity at the rate of $25.00 per week and for 193 weeks of 75% permanent partial incapacity at the rate of $22.50 per week. This judgment was affirmed by the Court of Civil Appeals, and writ of error has been granted. 252 S.W. 2d 754.

At the beginning of the trial the petitioner, conceding that the pleading and evidence would sustain the award of a "lump-sum" recovery, moved the Court to instruct counsel not to read to the jury that portion of his petition setting out such fact allegations, one of which being that a contract had been made with respondent for a third of the recovery to be paid as attorney's fees. This motion was sustained.

Petitioner then moved the Court to instruct respondent's attorney not to read to the jury that part of the petition which followed and which reiterated the contract for attorney's fees. This motion was overruled and the allegation was read to the jury. We are of the opinion that this action on the part of the trial court was error.

■ Under no theory was it pertinent to advise the jury that

the plaintiff, by reason of the contract made with his attorney, would eventually receive only two-thirds of whatever award might be made. The amount of attorney's fees to be allowed in a compensation case is exclusively for the court and not the jury, and any such contract was made subject to the approval by the court. The court in his discretion could award a lesser amount. Art. 8306, Sec. 7d, Revised Civil Statutes; Texas Employers' Insurance Ass'n. v. Lane, 124 S. W. 2d. 893; Texas Indemnity Insurance Co. v. Bush, 163 S. W. 2d. 224.

Respondent, insisting that the action of the court was proper, cites the case of Employers' Liability Assurance Corporation v. Sims, 67 S. W. 2d. 445 (Error refused); Houston Fire & Casualty Insurance Co. v. Ford, 241 S. W. 2d. 158, N.R.E. In both of those cases the issue of lump-sum award was before the jury for decision, and the element of attorney's fees was properly to be considered by the jury on that issue. Consequently these cases are not in point here.

■ The Court of Civil Appeals justifies the reading of this allegation by invoking Rule 265, Texas Rules of Civil Procedure. We believe the purpose of the rule is no more than to set forth the order in which the different steps of a jury trial are to be taken generally. It has no application at all to the point raised here. Johnson v. Willoughby, 183 S. W. 2d. 201, Error refused.

It has been held by this court that a discussion of attorney's fees by the jury is material misconduct and will justify reversal. White Cabs v. Moore, 146 Texas 101, 203 S. W. 2d. 200; Texas & P. Ry. Co. v. Gillette, 125 Texas 563, 83 S. W. 2d. 307; St. Louis Southwestern Ry. Co. v. Lewis, 10 S. W. 2d. 534; Texas & P. Ry. Co. v. Mix, 193 S. W. 2d. 542.

Respondent argues that these cited cases involving suits for damages at common law would not be applicable to this suit brought under the workmen's compensation law. We are able to perceive no difference in the principle involved. The same calculated influence brought to bear and such information given to the jury seems to us to be just as effective in a compensation case as it would be in a damage suit. In this case there was no inadvertent reference to attorney's fees, no instruction by the court to disregard the same, but on the other hand the contract for attorney's fees was read with the express approval and permission of the court.

The application of the rule contended for by respondent would compel the reading to the jury of those purely jurisdictional allegations concerning the prior submisison of the claim to the Industrial Accident Board and its award, which clearly are not permitted to be revealed to the jury. Fidelity Union Casualty Co. v. Cary, 25 S.W. 2d. 302, (Com. App.); Texas Employers' Insurance Ass'n. v. Downing, 218 S.W. 112. Writ refused; Employers' Liability Assurance Corporation v. Young, 203 S.W. 2d. 822.

■ In our opinion this error was reasonably calculated to create a greater sympathy for respondent, to influence the jury to make a larger award than it would otherwise have made, and thus cause the rendition of an improper judgment in this case. Rule 503, Texas Rules Civil Procedure; Texas Power & Light Co. v. Hering, 148 Texas 350, 224 S.W. 2d. 191.

■ On the second point we agree with petitioner that the trial court erred in refusing to permit its medical witness to manipulate respondent's foot in an effort to show that there was no loss of motion as claimed. Respondent, while on the stand in the presence of the jury and at the suggestion of counsel, removed his shoes and socks and demonstrated to the jury he could not depress his foot below a horizontal position. Petitioner then sought to have its medical witness, by taking hold of the foot, to show that the member could be raised and lowered from the horizontal position. The objection made by respondent's counsel and sustained by the court is as follows:

"We object to try to have a medical examination made here because the law provides a method and a way and we want our rights under the law.

"We have no objection to the doctor's testifying about it, but if he goes to touch him we object."

Petitioner contends that when the injured part has been bared and exhibited to the jury, in effect it was introduced in evidence and accordingly an examination and demonstration should have been permitted then and there. The rule is well stated in Kenney v. LaGrone, 62 S. W. 2d. 600, citing Chicago R. & I. T. Ry. Co. v. Langston, 19 Texas Civ. App. 568, 47 S. W. 1027, affirmed, 92 Texas 709, 51 S. W. 331, and many other authorities. While these cases deal with the right of an examination in the presence of the jury, nonetheless we think the holdings clearly encompass the right of the demonstration

sought to be performed here. Respondent contends that this was in effect an attempt on petitioner's part to have a physical examination made and to accomplish this he should have availed himself of the provisions of Section 4, Article 8307, Revised Civil Statutes. This contention was sustained by the Court of Civil Appeals.

Under the circumstances here we do not think this provision has any application. An examination had already been made by this doctor and he was attempting here to demonstrate what he claimed his previous examination revealed, namely, that there was little loss of motion and that the foot could be manipulated up and down from the ankle joint.

Respondent argues that even had the doctor been able to raise and lower the foot, and had he been permitted to demonstrate this fact to the jury it would have had no weight or bearing for the reason that it would not tend to show that respondent himself had such muscular control over the movement of his foot. We think a fair appraisal of the respondent's testimony would indicate a rigidity or stiffness in the ankle joint caused by a fusion of the bones rather than a muscular failure. At least the demonstration such as the doctor asserted could have been made would tend to show that there was no such stiffness or rigidity. There was no assertion or objection that such pressure as the doctor might apply would cause any discomfort or pain and no reason is shown why the privilege of this demonstration should have been refused.

By reason of the error in permitting the contract for attorney's fees to be read to the jury, the judgments of the trial court and Court of Civil Appeals are reversed and the cause remanded to the district court for another trial.

Opinion delivered February 11, 1953.

MR. JUSTICE CALVERT, joined by JUSTICE SMEDLEY, concurring.

The majority of the court by the opinion written by Justice Culver sustains the petitioner's first two points of error, thereby holding that each of the rulings therein complained of was erroneous.

I agree that the cause should be remanded but only because of the error complained of in the first point.

I do not regard the ruling complained of in the second point as erroneous. The point of error is set out in order to bring it under closer analysis:

"The Court of Civil Appeals erred in holding that the trial court had discretion to refuse to permit defendant's medical witness to demonstrate the freedom of movement in plaintiff's toes, foot and ankle by manipulating same in front of the jury after plaintiff had waived his immunity by voluntarily exhibiting his foot to the jury and attempting to demonstrate the loss of motion therein."

It will be noted that petitioner does not complain that it was denied the right to a reasonable examination of respondent's foot, as indeed it cannot as will later be seen; its claim of error rests entirely upon its demand to "demonstrate" the flexibility of respondent's toes, foot and ankle by "manipulating" them "in front of the jury." The theory upon which the right is demanded to demonstrate to the jury the extent of respondent's injury by manipulating his injured foot is this: By exhibiting his foot to the jury the respondent waived the inviolability of his person, and the foot being thus offered in evidence, the petitioner had the right, as by way of cross-examination, "to make such further exhibition of it as may have been relevant to the issues in the case," including the right to "manipulate" it before the jury. No case so holding has been cited by petitioner, none has been cited in the majority opinion, and none has been found by the writer after extended research. Moreover, such a holding is directly contrary to the spirit underlying the cases relied on by petitioner and by the majority.

Petitioner contends that the right asserted is governed and controlled by rules of common law and I will first examine the problem in the light of such rules.

It is well established in the jurisprudence of this state that in the absence of a statutory requirement to the contrary, an injured litigant cannot be compelled to submit himself or his injured parts to an examination by his adversary or even by an impartial examiner. A contrary rule prevails in some states and was once urged upon the courts of this state, but it was rejected by this court in a forceful opinion by Judge Brown in the case of Austin & N.W.R. Co. v. Cluck, 97 Texas 172, 77 S.W. 403, 64 L.R.A. 494, 104 Am. St. Rep. 863, 1 Ann. Cases 261. In that case this court recognized a division of authority on the question, analyzed the leading cases representing the two points

of view, and said: "It is sufficient to say for the courts of Texas that the authority to order such an examination and force a party to submit to it is found neither in the common law nor in the statute laws of this state, and therefore does not exist and cannot be exercised by the courts of Texas."

The rule of the Cluck case has never been repudiated and in keeping with and to preserve the spirit of that decision it has been held that the injured party does not lose his immunity from involuntary examination merely because he points out to the jury the part of his body that has been injured or in which he suffers pain. Texas Electric Ry. Co. v. Rowell, Tex. Civ. App., 211 S.W. 788, writ dism.; Safeway Stores, Inc. of Texas v. Rutherford, Tex. Civ. App., 101 S.W. 2d 1055, affirmed 130 Texas 465, 111 S.W. 2d 688. Moreover, a Rule requiring examination at one time adopted by this court was subsequently repealed.

But petitioner contends that the courts have established an exception to the rule of the Cluck case, which exception required the trial court to permit petitioner to demonstrate in the presence of the jury the condition of respondent's foot by manipulating it. In support of its position petitioner cites the following cases, some of which are relied on by the majority for sustaining petitioner's contention: Chicago, R.I. & T. Ry. Co. v. Langston, 19 Texas Civ. App., 568, 47 S.W. 1027, on motion for rehearing, 19 Texas Civ. App. 585, 48 S.W. 610, certified questions answered, 92 Texas 709, 50 S.W. 574, 51 S.W. 331; Houston & T.C.R. Co. v. Anglin, 99 Texas 349, 89 S.W. 966, 2 L.R.A. (N.S.) 386; Galveston H. & S. A. Ry. Co. v. Chojnacky, Tex. Civ. App., 163 S.W. 1011, no writ history; Bower v. Lively, Tex. Civ. App., 11 S.W. 2d 556, no writ history; Panhandle & S.F. Ry. Co. v. Sedberry, Tex. Civ. App., 46 S.W. 2d 719, no writ history; Haynes v. Town of Trenton, 123 Mo. 326, 27 S.W. 622. In addition, the majority opinion cites the case of Kenney v. LaGrone, Tex. Civ. App., 62 S.W. 2d 600, affirmed, 127 Texas 539, 93 S.W. 2d 397.

The foregoing cases undoubtedly announce an exception to the rule of absolute immunity laid down by the Cluck case, but I cannot agree that the exception is as broad as petitioner contends. The cases most certainly do not expressly hold, and I cannot read into them a holding, that by exhibiting his injured parts to the jury the litigant loses not only his immunity from examination by the opposite party, but, in addition, under a

theory of cross-examination, authorizes the opposite party to conduct that examination in the presence of the jury, with the right to manipulate and experiment as well. I cannot agree with petitioner in its conclusions expressed as follows: "Plaintiff cannot waive his privilege as against a visual examination and still insist on it as against an examination by manipulation or other appropriate means. * * * The doctor cannot be limited to a visual examination, but must be allowed to apply whatever tests he considers to be reasonably necessary to determine the true nature and extent of the claimed disability."

The principal Texas case on which petitioner relies is Ry. Co. v. Langston, supra. That case was decided by a divided court and the dissent by Justice Hunter is not without force. However that may be, the majority view was adopted and approved by the Supreme Court and the exception to absolute immunity was created. What did the court say the exception was? The *nature* and *extent* of the exception is found in the language of the court, later quoted with approval by this court in Houston & T. C. Ry. Co. v. Anglin, supra, as follows, (99 Texas 349, 89 S.W. 966): "But, inasmuch as appellee invited an inspection and examination of her wounded limbs by making profert of them on the trial, * * * *she thus waived her right to object,* upon the ground of invasion of her right of personal security, *to a reasonable and proper examination, under the direction of the court, of the wounded parts. She thus, by her own voluntary act, conferred upon the court jurisdiction to compel what otherwise she might have refused to submit to.*" Does this language say that by exhibiting her wounded legs the plaintiff proffered them in evidence with the resulting right in the defendant, as by way of cross-examination, to apply *in the presence of the jury* "whatever tests it considers to be reasonably necessary to determine the true nature and extent of the claimed disability," including the manipulation of the foot? It. certainly says no such thing and the language of the court is too simple, clear and plain to be made to say it by construction or inference.

In the *Langston* case the defendant demanded the right to have the plaintiff's legs examined by its physicians, at one point in the proceedings suggesting that it be done "here and now." The plaintiff resisted the defendant's motion, although agreeing to an examination by disinterested medical witnesses. The trial court's action in overruling the defendant's motion was held to be error but the language of the Court of Civil Appeals in so holding is worth noting. It said: "The objection made by appel-

lee's counsel should have been overruled, and the witnesses permitted then and there, *or at such other reasonable time and place as the court might appoint, to make the proposed examination, and give the result of it to the jury.*"

In the *Anglin* case this court simply reaffirmed the rule of the Langston case, saying: "The rule acted upon in that case, that, *where a party has once exhibited his person to the jury to show the extent of his injuries, he may be required during the course of the trial to re-exhibit them,* has never been modified by this court." This is a far cry from saying that once a person has exhibited his injury he must, in the presence of the jury, submit to such manipulations as are reasonably necessary to show the nature and extent of his injuries!

*Galveston, H. & S. A. Co. v. Chojnacky* is authority for no more than that immunity being waived the right of *examination* exists and the court approved the language of the Langley case that this right was "*to a reasonable and proper examination, under the direction of the court.*"

In *Bower v. Lively,* supra, the only holding was that *by his exhibition of his injured eye the plaintiff lost his immunity from examination by the defendant.*

In *Panhandle & S. F. Ry. Co. v. Sedberry,* supra, plaintiff exhibited his injured foot to the jury and the Court of Civil Appeals held that the trial court "should have granted the defendant the right to have the injured member *examined under proper circumstances* by physicians of the defendant's selection." There was no holding here of the right to manipulate in the presence of the jury.

In *Kenney v. LaGrone,* supra, the plaintiff exhibited her injuries to the jury and the defendant assigned error to the refusal of the trial court "to grant appellant's motion to compel appellee to submit to a physical examination by doctors of appellant's selection." The court recognized the general rule of immunity from involuntary examination but recognized also that this immunity was lost to one who voluntarily exhibited his injuries to the jury. "*In such case, speaking generally,*" said the court, "*the defendant may properly demand that the plaintiff submit to reasonable examination by reputable physicians of defendant's selection * * *.*"

We come now to consider the Missouri case of *Haynes v.*

*Town of Trenton,* supra. It is one of the principal authorities upon which petitioner relies. In that case a judgment in favor of the plaintiff was reversed and remanded by the Supreme Court of Missouri on grounds that did not deal at all with the problem here under search. The opinion of the court was written by Justice Barclay and Chief Justice Black and Justice Brace concurred in the judgment and in that opinion. In a separate concurring opinion, not joined in by any of the other justices and therefore not in the opinion of the court, Justice McFarlane expressed the view that the trial court had also erred in refusing to require the plaintiff, whose leg had been exhibited to the jury, to submit the leg for further examination to defendant's physicians who had previously examined it. There is language in the opinion to the effect that "the question was not as to the right of the defendant to have an examination of the injuries made, but as to the right to test the effect and reduce the weight of evidence introduced by the plaintiff." Aside from the fact that the views expressed did not represent the opinion of any court, the question was in fact one involving only a right of examination, not of experiment, and there is nothing in the opinion to show that the examination was to be conducted in the presence of the jury.

An anlysis of petitioner's authorities fails to furnish support for the majority holding that because the respondent exhibited his foot to the jury the petitioner thereby became entitled, as a matter of right, to manipulate the foot in the presence of the jury. As a matter of fact, petitioner's own cases indicate exactly the contrary as the foregoing analyses show beyond doubt. There are other cases which buttress the conclusion that an injured party who does no more than exhibit his injured member to the jury thereby confers upon the opposite party only the right to require another exhibition thereof so that such party may make *a like examination* in the presence of the jury, with the right to have such further reasonable examination thereof as the trial court in its discretion may permit and direct. It will be well to refer to some of these cases.

In the case of St. Louis S. W. Ry. Co. v. Smith, 38 Texas Civ. App. 507, 86 S.W. 943, no writ history, decided after and in the light of the *Langston* case, the court said: "But we are inclined to the opinion that if the appellee exhibited his eye to the jury, and his physician then and there undertook, while testifying, to point out the injury to appellee's eye, appellant was entitled in rebuttal thereof to call medical experts of its own

selection *to in like manner examine the eye, and give in testimony their opinion as a result of such examination."*

In the case of International & G. N. Ry. Co. v. Bartek, Tex. Civ. App., 177 S.W. 137, affirmed Com. App., 213 S.W. 602, it was held that the trial court did not err in refusing to require a plaintiff, who exhibited his back to the jury to which both his own and the defendant's medical witnesses pointed in connection with their testimony, to submit to a doctor of the defendant's selection for the purpose of having X-rays of the back made, particularly since he had agreed to have X-rays made by another competent and distinterested expert.

In the case of Chicago, R. I. & G. Ry. Co. v. Pemberton, Tex. Civ. App., 170 S.W. 108, writ refused, in which the plaintiff exhibited his knee to the jury in such manner that the jurors could hear the grating sound in the joint when the knee was moved, it was held that the trial court did not err in refusing the defendant's request to require the plaintiff to submit, under anaesthetic, to examination of the knee by defendant's experts. A like holding was made in the case of Mackay Telegraph Co. v. Armstrong, Tex. Civ. App., 241 S.W. 795, writ dism., in which the plaintiff, having made profert of his injured knee, the defendant demanded the right to have the plaintiff placed under an anaesthetic, laughing gas, while its medical experts examined the knee. The refusal of the demand was held not to be error, the court saying: "No such assault as that contended for by appellant will be permitted in any Texas court on the personal liberty of a citizen of this commonwealth."

I have found no case that treats the defendant's right of examination growing out of the plaintiff's loss of immunity therefrom as a "right of cross-examination." The courts do not treat the problem in that light. This is illustrated by the Illinois case of Wheeler v. Ry. Co., 267 Ill. 306, 108 N.E. 330,339 where it is said: "It is further insisted that the court erred in refusing to allow the defendant's physicians to examine the plaintiff's leg in the presence of the jury; the argument being that, since the plaintiff exhibited the injured member to the jury, the defendant's physician had a right to make a physical examination of the leg then, the same as they would have to examine any other exhibit in the case. It does not appear from the record that any examination of plaintiff's leg was made in the presence of the jury, other than the mere exhibiting of the same to the jury. We do not think the mere showing of the injured member

to the jury gave the defendants the right to invade the privacy of plaintiff's person and make him submit to an extended scientific examination of the same in the presence of the jury." So, also, one of our own courts, in the case of San Antonio & A. P. Ry. Co. v. Stuart, Tex. Civ. App., 178 S.W. 17, writ refused, has said: "It would be better in most cases to have the jury withdrawn while the examination is being made."

Another case graphically illustrating that the problem is not one of scope of examination and cross-examination of a witness is the case of Peters v. Hockley, 152 Ore. 434, 53 P. 2d 1059, 103 A.L.R. 1347. In that case the plaintiff was asserting the right to have a demonstration made in the presence of the jury as a part of her right of cross-examination of the defendant's medical witness. Although it would appear that the demonstration made was well within the general scope of cross-examination in that it had a tendency to break down and minimize the effect of the Doctor's testimony, it resulted in outcries of pain by the plaintiff and it was held to be reversible error.

Thus far the question presented has been dealt with as though it arose in the course of the trial of a common law negligence suit and therefore as though it were governed by rules of law applying in such cases. Treating the problem thus, I have reached the following conclusions from the cases examined: (1) The injured party has absolute immunity from any type of involuntary examination by the opposite party or his representatives. (2) This immunity is lost if in the course of trial the plaintiff exhibits the injured part of his body to the jury. (3) The loss of immunity does not arise out of the right of cross-examination with the ensuing right in the defendant to conduct in the presence of the jury all such examinations, manipulations or other such experiments on the body of the plaintiff as are necessary to destroy in the minds of the jury the evidentiary value, if any, of the exhibition. (4) The loss of immunity invests the defendant with the absolute right to make in the presence of the jury the same general type of exhibition or examination as has been made by the plaintiff. (5) The loss of immunity also invests the defendant with the right to make such further examination as is reasonable under the circumstances, preferably out of the presence of the jury, the time, place, nature and extent of such further examination, however, to be fixed by the trial judge, his action in that respect being error only upon a showing of clear abuse of discretion.

Under the common law rules just enumerated it was not error for the trial court in this case to refuse to permit the petitioner's medical witness to manually manipulate respondent's foot. Respondent had merely exhibited his foot to the jury, indicating the extent to which the front of the foot could be depressed by muscular control. The demonstration which petitioner wished to conduct was not in like manner with the demonstration made by respondent. As a matter of fact, respondent's counsel offered to have and did have the respondent to re-exhibit the foot so that petitioner's medical witness could testify with respect to his previous examination thereof and from a visual examination thereof. Moreover, the respondent was required to pull off both shoes and socks, to roll his pants leg up to the knees, to stand in the presence of the jury and to turn around in the presence thereof so that petitioner's medical witnesses could testify with greater clarity with respect to the condition of the injured foot as compared with the other foot. Respondent insisted, however, that defendant's medical witness should not undertake to manually manipulate the foot in the presence of the jury, the while offering, nevertheless, to have respondent submit to such a general examination out of the presence of the jury. The trial judge, in the exercise of his discretion, overruled the request of the petitioner, in effect holding that he would permit the type of examination requested only out of the presence of the jury. Under the many authorities heretofore cited the ruling of the court in this respect was obviously not an abuse of discretion.

That the time and place of the type of examination sought should be left largely to the discretion of the judge who has the parties and the emotional factors before him can be illustrated from the facts of the instant case. Suppose the manipulation experiment had been permitted, and the respondent, not wishing to be made the subject of the experiment in the presence of the jury, had, through muscular control, made it impossible for the doctor to bend his foot or his ankle except by unusual effort or exertion? Or suppose, having relaxed his muscular control, the respondent had suddenly cried out as though in pain, there being no one in the courtroom who could know or say whether the pain was real or simulated, actual or feigned? It is not a question of whether petitioner should have been permitted to run this risk at its own request; it is a question of whether the court should have been required to incur the risk of such a disturbance of orderly trial processes and courtroom decorum.

In actuality, this was not a trial of a common law negligence case; it was a trial of a workmen's compensation case. In compensation cases the injured party has lost his right to immunity from involuntary examination through statutory provision. Article 8307, Sec. 4, provides that the Industrial Accident Board "may require any employee claiming to have sustained injury to submit himself for examination before such Board or some one acting under its authority at some reasonable time and place within the State, and as often as may be reasonably ordered by the Board to a physician or physicians authorized to practice under the laws of this State." It is further provided that if the employee or the insured requests, "he or it shall be entitled to have a physician or physicians of his or its own selection present to participate in such examination." It is held that when a compensation case reaches court, the court has the same power as the Board to require a physical examination. Indemnity Ins. Co. of North America v. Murphy, Tex. Civ. App., 53 S.W. 2d 503, no writ history. Accordingly, when a compensation claimant becomes a witness in a case he has already lost his immunity from involuntary examination and a display of his injured member can have no effect on his rights in that respect. The only right that the insurer can acquire from a mere exhibition of the injured member in the courtroom is to have another exhibition of it for its benefit. If the insurer wishes a more extensive type of examination the statute specifically empowers the court to order it at a reasonable time and place, with both parties to the suit having the right to be represented at such examination by physicians of their own selection.

When petitioner in this case demanded to have respondent's foot manually manipulated by its physician, respondent's counsel agreed to the examination provided it was made in keeping with the statute, out of the presence of the jury, and with respondent having the right to have a physician of his own choice present at such examination. The law certainly clothed the court with power to order the examination in keeping with the statute, and petitioner could not, as a matter of right, demand more. The same statute which has taken from the injured workman his common law immunity from involuntary examination has marked out in certain respects the manner in which that examination shall be conducted, and has entrusted to the discretion of the Industrial Accident Board and of the courts the duty of fixing the time and place of the examination. The very witness involved had twice before examined the respondent, the first time two days after the accident and the last about a month be-

fore the trial. The record indicates that even a third examination might have been had in keeping with the terms of the statute but petitioner insisted on its right to have the doctor "exhibit to the jury and demonstrate the motion and lack of motion and limitation, if any" in the foot. Neither the statute nor the rules of common law required that the demand be granted.

From the standpoint of the practical effect of our ruling on petitioner's second point of error the importance of the matter hardly justifies the length of this opinion. The inherent risk and danger to the defendant from experimenting with the plaintiff's injured parts in the presence of the jury will likely make the demand for that right rare indeed. On the other hand, the radical departure made by the majority holding from the settled rules of law applicable to such demands justifies, in part at least, this review of the nature of the problem involved.

Petitioner's second point of error ought to be overruled.

Opinion delivered February 11, 1953.

Associate Justice Smedley joins in this opinion.

MR. JUSTICE SMITH dissenting.

I cannot agree to a reversal of this case, and, therefore, respectfully register this dissent.

Respondent filed this suit November 10, 1950, alleging that he was a minor 19 years of age, and sustained an injury on November 29, 1949, while in the course of his employment with the Keetch Metal Works, Inc. Paragraph 10 of his petition alleges that hardship and injustice would result unless the compensation due him is paid in a lump sum, and one of the reasons was that he had contracted and agreed to pay his attorneys one-third of any recovery which might be awarded.

Paragraph 11 contains the usual allegations as to employment of attorneys, the necessity therefor and his agreement to pay his attorneys one-third of any recovery. On December 1, 1950, petitioner filed its Original Answer containing two special exceptions. Special Exception Number One reads as follows:

"Defendant moves the Court to prohibit the plaintiff from reading to the jury the allegations in Paragraph 10 of said petition, wherein plaintiff seeks to recover a lump sum award, and

for the purpose of this motion, defendant stipulates that, in the event plaintiff receives a total and permanent award, defendant will pay same in a lump sum; consequently, in view of the stipulation aforesaid, the allegations of manifest hardship and injustice are not material or relevant to any issue in the case, and to permit same to be read to and considered by the jury would cause or have a tendency to cause the jury to find a greater disability for a longer period of time than the facts otherwise warrant, and consequently, the reading of said allegation to the jury is and will be prejudicial to this defendant and, of the foregoing motion, defendant prays judgment of the Court."

The trial court sustained this exception to which action the plaintiff excepted, and paragraph ten was not read to the jury, no evidence was introduced and no issue was submitted on the question of lump sum award.

Special Exception Number Two reads as follows:

"Defendant moves the Court to prohibit plaintiff from reading to the jury the allegations in Paragraph 11 and else where in said petition, wherein plaintiff alleges the employment of an attorney and agreement to pay him one-third of any recovery herein, for the reason that same is not a controverted fact between plaintiff and defendant, and is not an issuable fact to be submitted to the jury and its sole and only province is a jurisdictional one to enable the Court as distinguished from the jury to fix a reasonable attorney's fee; and to permit same to be read to and considered by the jury would cause or have a tendency to cause the jury to find a greater disability for a longer period of time than the facts warrant, and to read same to the jury is therefore prejudicial to this defendant; and for the purpose of this motion, defendant stipulates that, in the event of a total and permanent award, defendant will pay same in a lump sum, and of the foregoing motion, defendant prays judgment of the Court."

This exception was overruled and paragraph 11 was read to the jury. It will be noted that in passing on Special Exception Number Two, the trial court had before it the contention that paragraph 11 should not be read to the jury for the reason that the matter of attorney's fees was a *jurisdictional* question, and its only purpose was to enable the court and not the jury to award a reasonable attorney's fee, and the further contention that "to permit same to be read to and considered by the jury would

cause or have a tendency to cause the jury to *find a greater disability for a longer period of time than the facts warrant,* and to read the same to the jury is therefore prejudicial to this defendant \* \* \*." (Emphasis added). In the first place, the issue of attorney's fees is not a jurisdictional question, and in the next place, the record in this case does not support the contention that the jury awarded the respondent a greater period of disability than the facts warranted. The court in its charge instructed the jury, "During your deliberations on this case, you will not consider, discuss or relate any matters not in evidence before you, and you will not take into consideration the effect your answers may have on who wins or loses the case, but merely answer the questions as you may find the facts from the evidence before you and under the definitions and instructions given you herein."

This Court, in the case of Gillette Motor Transport Co. v. Whitfield, 145 Texas 571, 200 S. W. 2d 624, said:

"Presumably, the jury understood and followed the instructions of the Court. (Authorities cited). And, if so, they considered only that which it was proper for them to consider and the defendant suffered no injury. We cannot presume that the jury misunderstood and misapplied the Court's instructions and considered matters which it should not have considered, and then base a reversal upon such an unsupported presumption."

The answers of the jury to the questions propounded do not show a reckless disregard of its oath to follow the charge of the Court, but, on the other hand, reflects that the jury gave a fair, unbiased and impartial consideration to all the evidence introduced during the trial. The record contains 569 pages of evidence and the Court submitted the issues raised by such evidence. The jury found that the respondent sustained total disability, but that such disability was temporary, and that total incapacity continued for a period of 208 weeks. It found that respondent sustained 75% partial incapacity and that such partial incapacity was permanent.

This Court has never given any indication to litigants that the reading of the clause relative to attorney's fees was prejudicial error. In the case of Employers' Liability Assur. Corporation, Limited, v. Sims, 67 S.W. 2d 445, Writ Refused, the Court had before it the same question raised by special exception, as in this case. In that case, this Court refused a writ of error, and thereby adopted the opinion as its own. The Court gave three

separate and distinct reasons why it was not reversible error to read the pleading under question to the jury. It is true, the issue of lump sum award was involved, but aside from that question, the Court said:

"We do not think there was reversible error in overruling appellant's objection to the reading to the jury of the clause in the petition, alleging that the petitioner had contracted to pay one-third of his statutory recovery as a fee. Such clause contains a necessary allegation for the judgment to award the attorney fee out of appellee's statutory recovery. In a contested case, arising under the Workmen's Compensation Law (Rev. St. 1925, Art. 8306 et seq. as amended), the jury is not permitted to pass upon the amount of the recovery to be awarded. A jury determines only whether such employee was injured while working in the course of his employment, the character, extent, and duration of the injury, and, on these findings, the court fixes the amount of the recovery from such findings, under statutory mandate, in respect to the sum that must be adjudged. The court also finds the reasonable attorney fee, which is sought to be recovered, and apportions the statutory recovery, between the injured employee and his attorney, in accordance with such finding. If, however, we should be mistaken in the conclusion that it was not error to permit counsel for appellee to read to the jury the clause in the petition seeking the recovery of the attorney fee, nevertheless there is shown no reversible error in the instant case, for such error clearly appears to be harmless, for the evidence of the weekly wage that appellee received, as found by the jury, is based upon evidence practically undisputed, and the finding that appellee received total and permanent disability is based upon the great preponderance of the evidence. It therefore affirmatively appears that appellant's rights were in no way prejudiced by the ruling of the court."

In the instant case, as in the Employers' Liability Assur. Corporation, Limited, v. Sims, supra, the jury was not permitted to pass upon the amount of recovery to be awarded, it only passed on whether the respondent was injured in the course of his employment, the character, extent and duration of the injury, and the amount of weekly wage which would be fair and just to both plaintiff and defendant. The evidence on the question of average weekly wage is undisputed; and the evidence on all the issues sustained the findings of the jury.

I am further of the opinion that the respondent in this case cannot eliminate the issue of lump sum award by way of special

exception, and that it was error for the trial court to have sustained the exception as it did. The issue of lump sum award was one of fact and can only be decided by one of two methods—either submit the issue if raised by the evidence to the trier of the facts, or by agreement of the parties. The petitioner proceeded in this case so far as this issue is concerned in a manner which would not be binding on it. The special exception could have been withdrawn at any time before the close of the evidence. The respondent should not have been deprived of his right to plead and prove all the facts essential to a recovery of a lump sum unless and until the petitioner had agreed and offered, without reservation, to so pay whatever judgment might be awarded plaintiff, and such agreement and offer had been accepted by respondent.

By its second point petitioner contends that the trial court erred in refusing to permit Dr. Butte, a defense witness, to manipulate respondent's foot in the presence of the jury. I agree with Mr. Justice Calvert that the action of the court was not error, but I go on to say that if it was error it was not reversible error.

It is true, respondent exhibited his foot to the jury, but, in so doing, he did not make any demonstration such as manually taking hold of his foot. The main issue in this case was not the existence and extent of limitation of motion in the joints of respondent's foot and ankle, but what was the extent and duration of the injury and whether it extended to or affected other parts of his body.

The record shows that Dr. Butte testified at great length. His testimony begins on page 330 of the statement of facts and ends on page 407. At page 399 appears the question to which the court sustained objection. The question was:

"Doctor, I will ask you if you will exhibit to the jury and demonstrate the motion and lack of motion and limitation, if any, in this young man's foot?"

Petitioner sets out in its Bill of Exceptions No. 3 that *"had Dr. Butte been permitted to examine and inspect plaintiff's foot, ankle and leg, and to manually flex the same in the presence of the jury, he could have pointed out* and fully demonstrated to the jury at the time of the trial". (Emphasis added).

"1. That plaintiff had completely recovered from a tremen-

dously swollen right foot and ankle and the large blisters, abrasions and skinned places over his foot which Dr. Butte observed on the first examination in December, 1949, within the first week of the accident in question.

"2. That the fractures to the first, third, fourth and fifth metatarsal bones in plaintiff's right foot had completely healed and were in good alignment;

"3. That plaintiff's heel bone was completely normal, in good alignment and freely moveable with no limitation of motion in it;

"4. That plaintiff's right ankle and ankle joint were completely normal, freely moveable, with no swelling, pain or limitation of motion in the ankle or ankle joint;

"5. That there was a complete absence of swelling in plaintiff's foot;

"6. That there was some slight limitation of motion in the toe; however, there was good motion of the joints in the rear of the foot which allowed the foot complete freedom to turn in and to turn out;

"7. That the heel bone was completely normal, in good alignment, and freely moveable;

"8. That a fusion of the cunieform bone gave rise to a slight limitation of motion of the forepart of the foot, however, this fusion causes no pain;

"9. That the joints in the rear of the foot which govern the motion of the foot from side to side were entirely normal and there was no limitation of motion in the rear of the foot or ankle;

"10. That extended walking would cause plaintiff to have a slight limp due to limitation of motion in the toes and the fusion of the cunieform bone; however, any limp due to the slight limitation of motion in the forepart of plaintiff's foot would not cause any pain or disability in his hip or back and would not affect or extend the injury in his foot to his body generally;

"11. That there is no shortening of plaintiff's right leg;

"12. That there is no pain or muscle spasm in plaintiff's back;

"13. That plaintiff's injuries are confined to his right foot;

"14. That the removal of a soft tissue tumor between plaintiff's first and second toes was successful; no disability existed

from the removal of the tumor, and the *circulation* in his foot was good and in no way impaired; and

"15. That the comparison of plaintiff's right and left feet shows that plaintiff suffers from substantially the same amount of flat feet in both feet."

Prior to asking the above quoted question and taking Bill of Exception No. 3, the doctor had testified that he first saw the respondent two days after the accident, and that he re-examined him about one month before the trial; that on the first examination, respondent had a "tremendously swollen right foot and ankle; particularly the foot. There were a number of fairly large blisters over the foot, and a few small abrasions and skinned looking places on the foot". The doctor testified in complete detail as to his findings as the result of the second examination. This testimony, to a great extent, was the same as that which petitioner stated he expected to prove. However, some of the testimony is contrary to that set out in the Bill of Exception. For example: "There appeared to be considerable tenderness about the mid-foot when we tried to examine the foot and palpate the foot. It seemed to be particularly tender on top of the foot in the region of this operating scar;"

"Q. Does that picture there show any mass solidification of the bones which makes them immovable?

"A. I think there is probably some fusion between these cunieform bones and the base of the third metatarsal. I think that those joints are obliterated or grown together."

The doctor did not say that a fusion causes no pain. He did say that he could not find anything in the picture "that could be indicative of any cause for any pain." He went on to say: "The fact that there is a little bit of deformity of one of the fractures may cause some pain in the foot. It doesn't function completely normal. Therefore, it may be somewhat painful."

The record in this case conclusively shows that petitioner suffered no injury by the Court's refusal to permit the doctor to manipulate the foot. There is no evidence that the plaintiff's foot was any different in May 1951, the date of trial, than in April 1951, when Dr. Butte last examined him. How could the manipulation of the foot in the presence of the jury add anything to the doctor's testimony? Proof that the doctor would be able to manually force the foot to move would not be proof that plaintiff did

not suffer pain in the foot which affected other portions of his body.

The following hypothetical question, propounded to Dr. Butte, was based on facts in the case. It made no reference to motion or lack of motion in the foot. The question reads:

"* * * Now, Dr. Butte, assume that Arthur C. Hatton, 19 years of age, on November 29, 1949, was working at air conditioning — I mean working for a sheet metal works that was installing ducts for air conditioning in a tall ceiling room similar to this Courtroom, 15 to 20 feet high, something like that, and that a high scaffold that was being used to stand on to fasten the duct up to the ceiling had planks on it, and while the scaffold was being moved on the floor and while he was on the floor, a heavy timber weighing approximately 125 pounds, a board or plank fell off the scaffold and fell end down and hit him on top of the right foot; assume that after that he was hospitalized for approximately a month in St. Paul's Hospital, and was after that confined to bed for some period of time and then re-hospitalized about the 10th of April 1950, where he was hospitalized for about ten days in the Methodist Hospital, and then where he was treated for skin eruptions or whatever you call it, from some medication used on his foot, and again hospitalized in the Methodist Hospital for a period of about ten days when an operation was performed on his foot that resulted in a scar about five inches long on top of the foot—and I am sure you saw the scar when you examined him last month—and that he, during all of that period of time after he got up from bed, used two crutches for approximately eight or nine months to move around when he did get up from bed after the operation, and that after putting down the crutches and walking without crutches, he had pain in his right foot which radiated through his right leg into his hip and in the low part of his back, and he has had that pain from and since that time on all attempts to walk, and he had no pain in his hip or back and no trouble with his hip and back before this accident happened, would you tell the jury that pain in his hip and back was not related to the accident that he had on November 29, 1949?"

"Q. My question is, with that related statement of facts, would you tell the jury that there is no connection between the pain in his low part of his back and hip with the injury to his foot?"

"A. I wouldn't say there was no connection."

· This question sums up the evidence supporting plaintiff's contention, and the doctor admitted that if such evidence were true, then a limp from pain in the foot would affect the respondent's back.

Petitioner relies on the case of Kenny v. La Grone, 62 S. W. 2d 600, which held that when a person "voluntarily exhibits the injured part of his body to a jury during the trial of his case, he thereby waives the inherent inviolability of his person and immunity from examination by experts. In such case, speaking generally, the defendant may properly demand that the plaintiff submit to reasonable examination by reputable physicians of defendant's selection, and the trial court's refusal of the defendant's motion therefor constitutes error."

When you read this part of the holding, it seems to me it does not mean what the petitioner contends for. However, in my opinion, there can be no question as to what the Court meant when it went on to say the following: "But such error does not necessarily require a reversal. It is only when the error has apparently or probably resulted in injury to the defendant that the judgment should be reversed * * *." Then the court held that no injury had been made apparent or probable and affirmed the case. A writ of error was granted, 127 Texas 539, 93 S. W. 2d 397, but this point was not carried forward in the application, and therefore, was not discussed by the Court in its opinion of affirmance.

The judgment of the trial court and the Court of Civil Appeals should be affirmed.

Opinion delivered February 11, 1953.